Taylor, Chief-Justice
 

 There are but few cases ta he found on this subject, in the books to which we usu
 
 *327
 
 ally resort, and these are by no means decisive of the question. It is said in
 
 Sheppard’s Touchstone,
 
 140, in discoursing on a mortgage, if the payment be made, part of it with counterfeit coin, and the party accept it and put it up, this is a good payment, and consequently a good performance of the condition. In
 
 Wade’s case,
 
 (5
 
 Co.
 
 115,) we find this passage, “ And it was said, it was adjudged between
 
 Vafe
 
 and
 
 Stndley,
 
 that where the lessor demanded rent of his lessee, according to the condition of re-entry, and the lessee payeth the rent to his lessor, and he received it and put it in his purse, and afterwards, in looking over it again at the same time, he found amongst the money that he had received, some counterfeit pieces, and thereupon refuse4;.to carry away the money, but re-entered for the condition broken, that it was adjudged that the entry was not
 
 lawful;
 
 for when the lessor had accepted of the money, it was at his peril, and upon that allowance, he shall not take exception to any part of it.”
 

 As both these decisions were made to prevent a forfei-. ture in the one case and a re-entry in the other, it is probable that the Court went further to establish the payment, than they would have done under ordinary circumstances
 
 ;
 
 for the principles of justice dictate that the contracts of men ought to be fulfilled according to the understanding of the parties at the time they entered into them; and it is clearly understood, in every sale and exchange, that the Bank notes issued should be genuine, although the receiver may take upon himself the risk of the solvency of the Bank, and such a rule seems to mo to be entitled to support in the view of policy and convenience, as well as justice, since by tracing the bad note back from hand to hand, a detection of the first fraudulent utterer or maker is most likely to be effected. It has been remarked of the Civil Law, that in the opinions which the Roman Jurists deduced from the pure sources of genuine philosophy, innumerable, instances may be
 
 *328
 
 met with, of the admirable union of wisdom and justice, in which the force of truth is so strongly manifest, that to be assented to, it is only requisite tó be seen — that in jaw aro (je me(; with, instructive and frequently perfect guides in the exposition of the various questions which are of continued occurrence, and which, in the absence of positive authority, must be decided upon gene* ral grounds of rational jurisprudence.
 

 In the Civil Law, as quoted by
 
 Pothier,
 
 (1st
 
 vol.
 
 346,) the rule is thus stated:
 
 e<
 
 The debtor is not only without any right of obliging his creditor to receive any thing different from what is due as a payment, but even if the creditor by mistake receives some other thing upon the supposition of.that being the thing which is actually due, the payment vfould not be valid, and the creditor may, upon offering to return what he has so received, demand what is really due.” This is decided by
 
 Paulus,
 
 in b. 50, ff.
 
 Si qumn anrum tibi
 
 promississem,
 
 tibi ignoranti quasi anrum oes solverem, non liberabor.
 

 I am not apprized of any American decision on this point, except the case of
 
 Markle v. Hatfield,
 
 (2 Johns, 455,) in which an opinion is given by Chief-Justice Kent, with his usual ability, and concurred in by the Court, setting aside a payment made in a counterfeit Bank bill.
 

 Where the positive laws are silent, all Courts must determine on maxims of natural justice, dictated by reason
 
 ;
 
 that is, according to the law of nature. We cannot recur to primary principles of right and wrong, where the municipal institutions are express, for it is then presumed that they are founded on the laws of nature, or contain nothing repugnant to it.
 

 Bx
 
 the Court — A new trial was refused.