## Dan Ambrosia, Appellee, v. D. Underhill Smith and Clark G. Sauer, trading as Smith-Sauer Motor Company, Appellants.

### Gen. No. 31,858.

1. CONVERSION—*necessity of showing right to and withholding of possession.* In order to maintain an action of trover the plaintiff must prove at least a right to the immediate possession of the property and a wrongful withholding of such possession by the defendant.

2. PAYMENT—*use of forged war saving stamps.* A payment in forged war savings stamps amounts in law to no payment.

3. CONVERSION—*right of possession by buyer making payment with forged war saving stamps.* Where a contract for the sale of an automobile provides that the title and right of possession to the car shall remain in the seller until the purchase price is paid in cash, and the seller repossesses the car upon finding that war savings stamps given in payment are forged, the buyer has no right of possession that is wrongfully withheld by the seller which entitles the buyer to maintain trover for the value of the car, although both parties may have believed the stamps were genuine, and although the buyer accepted a note secured by a chattel mortgage for another part of the purchase price.

Appeal by defendants from the Superior Court of Cook county; the Hon. JOHN W. PREIHS, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1927. Reversed and judgment here. Opinion filed December 12, 1927. Rehearing denied December 27, 1927.

EDWARD I. ROTHBART and SEYMOUR M. LEWIS, for appellants; DWIGHT MCKAY and WHARTON PLUMMER, of counsel.

HARRY O. and MAGNUS B. ROSENBERG, for appellee; MILLARD C. EISEMAN, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, in an action in trover to recover the value of a Marmon automobile, upon trial by the court had judgment for $1,500, from which defendants appeal.

The court found the defendants guilty and arrived at the amount of the judgment by finding that the value of the automobile was $3,000, but that defendants were entitled to recoup the sum of $2,000, the amount of certain forged war savings stamps which had been delivered by plaintiff to defendants as part of the purchase price of the automobile. To the balance of $1,000 the court added $500 exemplary damages and entered judgment for $1,500. The plaintiff has assigned cross errors questioning the order allowing defendants to recoup.

We hold that the court should have found the defendants not guilty and entered judgment accordingly.

Defendants are distributors of automobiles in Chicago. In October, 1924, through one of its salesmen, a verbal agreement was made by plaintiff to purchase a Marmon automobile from defendants. Later in the same day the contract of sale, signed by the defendants, was brought to plaintiff's place of business to secure his signature. He was absent at the time and his father signed the contract. A copy was left with him which was shown to plaintiff the next morning, and plaintiff testified on the trial that his father had signed the order and that he had seen the same. This contract provided, among other things, that the new Marmon car should be taken by plaintiff at $4,190 with some extras at $341, or a total of $4,531, which the purchaser agreed to pay. He was to be allowed for his used car $1,731, leaving $2,800 to be paid in cash. The contract provided that this was to be paid when

the seller should notify the purchaser that the car was ready for delivery. Apparently a few days were required for installing the extras. This instrument also contains this provision:

"Title to and right of possession of said property shall remain in you (the seller) until balance of purchase price is fully paid in cash."

The day after this order was signed plaintiff gave defendants war savings stamps of the apparent value of $1,000 and two days later another $1,000 in such stamps. Plaintiff then signed a note for $800, evidencing the balance of the cash due. This purported to be secured by a chattel mortgage, although there is some argument as to its validity. Upon payment of the second $1,000 in stamps and the signing of the note, plaintiff took possession of the car. The note was payable one week after date and shortly thereafter plaintiff paid defendants $400 and about a week thereafter another $400, and was given the note and chattel mortgage.

Defendants deposited the $2,000 war savings stamps in their bank but shortly afterwards had their suspicions aroused by a newspaper article, in which plaintiff's name appeared, telling of a number of indictments for putting forged stamps upon the market. Thereupon D. Underhill Smith, one of the defendants, reported his transaction with plaintiff to a Captain Porter, one of the operatives of the United States Secret Service, who on November 13, 1924, went to the bank and took possession of the forged stamps in the amount of $2,000. Defendants never saw these stamps after they were confiscated by the Government and have never received any value for them.

Plaintiff admitted that he was taken to the Federal building and questioned about his connection with these forged stamps. That they were forged is admitted. Plaintiff says that he bought the stamps from one Sam Borino who, plaintiff knew, was a bootlegger.

Plaintiff thought Borino had "got them through some transaction," and he paid at the rate of $3.25 for each $5 stamp. The day following the interview of Smith and Captain Porter, the former had a conference with plaintiff and his father and mother about these forged stamps and requested plaintiff to make good. All the satisfaction Smith received was plaintiff's statement that he was not in a position to talk. Thereupon defendants repossessed themselves of the Marmon automobile, which they found in a garage. Later plaintiff and his attorney came to defendants' office and stated that they would arrange to pay the $2,000 and take possession of the car. This is not denied by plaintiff. Subsequently Smith had other talks with plaintiff, approximately six or eight times, in which he requested plaintiff to make good on the $2,000 payment. The last of these conversations occurred either the latter part of January or the early part of February, 1925. That such conversations took place is not denied. February 21, 1925, defendants notified plaintiff by letter that unless the $2,000 was paid within a few days the car would be sold for the amount due defendants. Plaintiff paid no attention to this and did not pay or offer to pay anything. Sometime in April following defendants sold the car.

It is elementary that to maintain an action in trover the plaintiff must prove at least right to the immediate possession of the property, and the wrongful withholding of such possession by the defendants. In the instant case plaintiff proved neither of these requisites.

Under the United States Law anyone who intentionally passes a forged or counterfeited obligation of the United States is guilty of a crime for which he may be fined or imprisoned. 10 U. S. Statutes, p. 12710. This statute applies to the transfer of forged war savings stamps. *United States v. Sacks,* 257 U. S. 37; *United States v. Janowitz,* 257 U. S. 42. Even though the person paying counterfeit money is ignorant of the

fact that it is counterfeit, such payment is a nullity. 30 Cyc. 1215 and cases there cited. Payment by counterfeit money is a nullity and the payee may recover the amount. *Hargrave v. Dusenberry,* 9 N. C. 326. When property is obtained from a person by purchase with counterfeit money, the right of property does not pass and the owner may recover it back. *Phelan v. Dalson,* 14 Ark. 79. The payment in forged paper leaves the original debt in full force and effect. *First Nat. Bank of Athens v. Buchanan,* 87 Tenn. 32. A payment in counterfeit money or forged stamps amounts in law to no payment. *Wingate v. Neidlinger,* 56 Ind. 520. Plaintiff nowhere in his brief questions that this is the law.

When it developed that the $2,000 paid to defendants was in forged stamps, the transaction stood as if no part of the $2,000 had been paid. The only condition on which defendants delivered the car to plaintiff was upon a genuine payment in real money. This condition failed and the fact that defendants received these stamps under the belief that they were genuine, and that they delivered the car to plaintiff, cannot impart any integrity and validity to the false payment; neither can the subsequent acceptance of a note of $800 with a chattel mortgage add substance to what was in fact a fictitious payment. Plaintiff was given ample time to make good. Even conceding his ignorance of the counterfeit character of the stamps (although his knowledge of their unlawful source casts some doubt as to his innocence), the plaintiff was not relieved of the obligation to make good the cash payment of $2,000; nor did he have the right to possession of the car. The sellers were rightfully entitled to the possession of the car until plaintiff made the cash payment which was a condition to his right of possession.

For the reasons indicated the judgment is reversed, and as the case was tried by the court and there can

be no recovery on the admitted facts, judgment is entered here that the plaintiff take nothing.

*Reversed and judgment here.*

MATCHETT, P. J., and O'CONNOR, J., concur.