## PENIX *v.* PUMPHREY.

Opinion delivered October 2, 1916.

1.   DAMAGES—CUTTING TIMBER WRONGFULLY.—Where appellee cut timber on land belonging to appellant, the measure of appellant's damage is the value of the timber itself which was cut and appropriated by the appellee, and the actual damage to the appellant's land as a consequence of the cutting of this timber.

2.   ACTIONS—PRESUMPTION AS TO JURISDICTION.—An action for damages for the wrongful cutting of timber was brought in equity, but should have been brought at law; *held,* the parties failing to raise the question of jurisdiction, and having voluntarily submitted the issue to the chancery court, the cause will be treated as cognizable in that court.

3.   COSTS—EQUITY RULE.—In equity the allowance of costs rests in the sound discretion of the court, but its decree will be reviewed and corrected where a manifest error has been committed.

4.   COSTS—RULE.—Where the party bringing an action against another either in law or in equity is shown to be in the right and the other party is shown to be entirely wrong, costs will be assessed against the party held to be in the wrong.

Appeal from Boone Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

STATEMENT BY THE COURT.

The appellants, plaintiffs below, instituted this suit against the appellee to enjoin him from trespassing upon an acre of land which appellants claim to own, and to quiet and confirm appellants' title. They prayed judgment against the appellee for damages on account of alleged trespasses. Appellants alleged that they were the owners of one acre, more or less, being all that part of the Northeast quarter of the Northwest quarter of Section 31, Township 21 North, Range 18 West, lying North of the main channel of the Carrolton Hollow Branch, such channel being the Eastern line of said one acre. They alleged that the appellee was the owner of lands adjacent on the South of the main channel of Carrolton Hollow Branch. That appellee had cut and removed the timber from the land described, which timber had not only a marketable value but served as a protection to other land

of the appellants by preventing the creek from cutting same away.

The appellee answered, denying that appellants were the owners and in possession of the land described in the complaint; alleged that he was in the possession; set up that he was the owner by virtue of certain deeds of conveyance, and denied the alleged acts of trespass; and prayed that appellants' complaint be dismissed and that he have judgment for costs.

The court, after considering the pleadings and exhibits and certain depositions then on file, found that it was necessary, before the respective interests of the parties could be properly adjudicated, that a survey of the land be made, and directed the surveyor of Carroll County to make the survey according to specific directions set forth in the order. The cause was continued for the report of the surveyor and the taking of further proof. Upon the final hearing the court entered a decree in favor of appellants, adjudging that they were the owners of the land described in the complaint and quieting their title; and enjoined appellee from the further cutting of timber or exercising any acts of ownership over the lands; but dismissed the appellant's complaint for damages and adjudged that appellants and appellee each pay one-half of the surveyor's costs; that each party pay his own witness fees and the costs of taking depositions, and that the plaintiffs (appellants) pay all the court costs.

From the judgment dismissing appellants' complaint for damages, and adjudging costs against them in any sum, this appeal has been duly prosecuted.

*E. G. Mitchell*, for appellant.

The court erred in not awarding damages to plaintiffs, at least $100.00, and in adjudging any of the costs against plaintiffs. There was no fraud and no mutual mistake. The court properly found that plaintiffs were the owners of the land and quited their title, but erred in not giving damages and in the awarding of costs. The decree should be modified and damages awarded here and judgment entered for all costs against the appellees. 74 Ark. 336;

85 S. W. 770; 71 Ark. 614; 77 S. W. 54; 4 Hayw. Tenn. 36; 54 Ark. 165.

*J. M. Shinn*, for appellee.

1. The findings of the chancellor that plaintiffs suffered no damages are sustained by the evidence and this court will not reverse 112 Ark. 341.

2. There was no abuse of discretion in the awarding of costs. 36 Ark. 383; 86 *Id.* 259, 280; 18 *Id.* 202-7; 19 *Id.* 148. Costs are within the discretion of the chancellor. 86 Ark. 608, 614; 11 Cyc. 32, 33, 36-7; 10 Conn. 121; 9 Dana, 261; 4 Stew. & Port. 138.

WOOD, J. (after stating the facts). 1. On the issue of damages, the father of appellants testified that he had operated the land in question for about twelve years; that the effect of the cutting of the timber by the appellee was to continually wear the bank off there and destroy the bottom land below; that the piece of land in controversy was protection to the other bottom land belonging to appellants; that appellee had cut timber off of the land in controversy over his protest. He was asked what the timber was worth and replied: "I would not want it cut at all. It was a protection to my place and I would not have had it cut. I would not have had it cut for $100.00. I would say that." Another witness, the former owner from whom the appellants deraign title, stated that he would not have had the timber cut, as it was done by the appellee, for less than $400.00 or $500.00. Another witness stated that, taking into consideration the value of the timber and the damage to the farm, he considered that adequate damages would not be less than $100.00.

It was shown that the land in controversy had on it walnut, hickory, ash and oak trees, some six, eight, ten and twelve inches in diameter. The appellants' testimony tended to prove that the land itself in controversy was of no value for agricultural purposes; that the only value it had was the timber and the protection that this timber afforded against the floods to other lower lands of the appellants, keeping the water from washing same away.

There is no testimony to show, specifically, how much the lands of appellants had deteriorated in value by reason of the cutting of this timber; nor was there any testimony to show what was the value, specifically, of the trees that were cut. This evidence does not furnish a basis for estimating the amount of damages that the appellants sustained by reason of appellee's trespass in cutting the timber from the lands of the appellants. While one witness testifies that he would not want it cut at all, because he wanted it as a protection to the place and would not have had it cut for a hundred dollars, he does not testify that the land was damaged to the extent of $100.00, and does not testify that the timber cut had that value. Another witness testified that he would not have had the timber cut for less than $400.00 or $500.00; but the testimony of this witness, likewise, does not show that the land was damaged by reason of the cutting of the timber in that sum, nor does he specify the value of the timber cut.

Now, the measure of appellants' damage was the value of the timber itself which was cut and appropriated by the appellee, and the actual damage to the appellants' land as a consequence of the cutting of this timber. No witness testified what the deterioration in the value of the land was or would be. The fact that witnesses would not have had the timber cut for certain amounts, if the land had belonged to them, furnished no definite and accurate standard for estimating the value of the land after the timber had been removed from it. These two witnesses, it will be observed, had widely divergent views as to what effect the cutting of the timber would have upon the land, so far as the value of their individual preferences were expressed; but it is not what any particular individual would have preferred or desired had he owned the lands, nor the value of such estimated desires or preferences, of which the law takes notice. In measuring damages of the character under consideration, the law requires that the actual damage to the lands should be definitely stated and a value placed upon such damage. It would have been impossible for the court to have fixed an accurate amount of damages from the indefinite manner in which these

witnesses expressed the value of what their desires with reference to the land would have been had they been the owners thereof.

The third witness, however, does furnish a definite standard for estimating the damages, and his testimony is nowhere disputed. He says that "taking into consideration the value of the timber and the damage to the farm, he considered that adequate damages would not be less than $100.00." His testimony, taken in connection with the other testimony on behalf of the appellants showing that appellee had cut the timber, and that the cutting of the timber would damage the land, furnished a definite basis for ascertaining the amount of appellants' damage. The appellee himself admitted that he cut the timber, and from all this testimony, which the trial court could not arbitrarily ignore, it was shown that appellants had been damaged by reason of the trespasses of the appellee in the sum of at least $100.00, and judgment should have been rendered in favor of the appellants for that amount.

2. The next question is whether or not the court erred in adjudging that the appellants should pay costs.

On the issue as to the ownership of the parcel of land in controversy the testimony was somewhat conflicting. The testimony on this issue is voluminous and it could serve no useful purpose as a precedent to set it out. Suffice it to say, a decided preponderance of the evidence shows that the appellants were the owners, and the decree of the court in so holding was therefore correct.

It was in evidence that when the appellants first discovered that the appellee was cutting the timber from the land in controversy they disputed his right to do so. Even though appellee cut the timber under a *bona fide* claim of ownership he had notice from the appellants that they also claimed to own the land. They protested against his cutting their timber, and he persisted in doing so over their protest.

Appellee himself testified concerning this as follows:

"Q. Now, I will ask you if he (Charley Penix) did not dispute your right to cut wood there?

A.    Yes, I believe the first time he talked he says it was his.

Q.    Did he not ask you to stop?

A.    He asked me to quit until we found out whose land it was.

Q.    I will ask you if he didn't say to you: 'Here, I think I have got a deed to it and you think you have got a deed to it and let us get some one to settle it and have them to settle it?'

A.    I believe that was the last time we talked about it.''

He further testifies: "I suppose Charley claimed under the deed. He came down there and tried to settle it." It appears, therefore, that appellee refused to settle the issue between himself and the appellants out of court, and that he persisted in cutting the timber upon and exercising acts of ownership over appellants' land, and they were thus compelled to resort to the courts in order to have their rights ascertained and to restrain appellee from doing further damage to their land.

It is nowhere alleged in the complaint that the appellee was insolvent, and therefore the appellants' cause of action for damages for the trespasses alleged was adequate at law. *Davis* v. *Davis*, 93 Ark. 93-101, and cases cited. There the action should have been brought and tried, in which case, upon appellants being adjudged the owners of the land, the judgment for costs would necessarily have been in their favor. The appellee did not, however, challenge the sufficiency of the complaint, and neither party asked that the cause be transferred to the law court. The parties litigant have raised no question as to the jurisdiction, and have voluntarily submitted the issue to a court of chancery, and we therefore treat the cause as cognizable in that court.

In *Blaisdell* v. *Sumpter*, 66 Ark. 7, we said: "In equity, the costs are not necessarily adjudged, as at law, against the losing party; but, on the contrary, the chancellor possesses a large discretion in the matter, and, when the facts warrant it, may distribute the costs upon equitable principles, without regard to the facts of the decree

in the case being otherwise for the one party or the other. But this discretion should be exercised upon well-known principles only, and in cases where the successful defendant is not without fault himself."

3. We have often ruled that in equity the allowance of costs rests in the sound discretion of the court. See *State, use Burton* v. *Fort*, 18 Ark. 202; *Temple* v. *Lawson*, 19. Ark. 148; *Jones* v. *Graham*, 36 Ark. 383; *Johnson* v. *Meyer*, 54 Ark. 442; *Williams* v. *Buchanan*, 86 Ark. 259; *Mt. Nebo Anthracite Coal Co.* v. *Martin*, 86 Ark. 608.

In *Temple* v. *Lawson*, *supra*, after stating the general rule "that the giving of costs in equity is entirely discretionary," we further said, in explanation of the rule: "But when it is said that the giving of costs in courts of equity, is entirely discretionary, it must not be supposed that these courts are not governed by definite principles in their decisions relative to the costs of proceedings before them; all that is meant, it is said, by the *dictum*, is, that these courts are not like ordinary courts held inflexibly to the rule of giving costs of the suit to the successful party, but that they will, in awarding costs, take into their consideration the circumstances of the particular case before it, or the situation or conduct of the parties, and exercise their discretion with reference to these points."

While the chancery court has a broad discretion in the matter of adjudging costs, yet the chancellor's discretion in this respect is not absolute, and his judgment will be reviewed and corrected where there is a manifest error in the exercise of such discretion. The law is correctly stated in 11 Cyc. 32, as follows: "In courts of equitable jurisdiction it is a rule of universal application that the allowance of costs is within the court's discretion, and that the action of the trial court cannot be reviewed or interfered with, unless such discretion has been manifestly abused. Costs are awarded or refused according to the justice of each particular case, but his discretion is not arbitrary. It is a judicial discretion calling for sound judgment upon all the facts and circumstances of the case and must not be so exercised as to result in injustice or oppression. In case the court's discretion is improperly

exercised, its action may be reviewed and its decree in respect to costs reversed or modified." See also page 37.

4. When one is compelled to resort to a court of justice to obtain redress for an injury which he has sustained at the hands of another, if he is held to be right in his claim and the other party is shown to be entirely in the wrong, then the party who is adjudged to be in the right should not be required to pay the costs. This is a sound principle which must be applied in equity as well as at law, and which was recognized by us in the case of *Greenhaw* v. *Coombs*, 74 Ark. 336.

The principle is applicable to the case at bar. Appellee, as shown by the clear preponderance of the evidence, was not the owner of the land in controversy; yet he persisted in asserting control over the same and compelled the appel'ants to resort to the courts in order to obtain a redress of their grievances. Although the court dismissed appellant's complaint as to the damages, the uncontroverted testimony showed that appellants, being the owners, were entitled to damages in the sum of at least one hundred dollars. The appellants were right in their contention throughout the entire litigation, and they should not in equity be required to pay any of ' the costs thereof.

The judgment is therefore reversed and the cause will be remanded with directions to the chancery court to enter judgment in favor of appellants in the sum of $100.00 and to retax the costs and to adjudge all of the same against the appellee.