ECKLES *v.* WHITEHEAD.

4-5113

Opinion delivered June 27, 1938.

*Botts & Botts,* for appellants.

*George E. Pike,* for appellee.

SMITH, J. Mrs. Harriett Whitehead was the mother of two children by her first marriage. One of these was a daughter named Hattie May Eckles, who was married to G. W. Botts. Her other child was a son named Edgar. Eckles. Her second husband was R. G. Whitehead, and to them was born a son, who was named R. H. Whitehead.

Mrs. Whitehead owned a small farm, which was the source of but little revenue. She and her second husband lived on this farm, and devoted their time principally to cattle raising. Mr. Whitehead had been a federal soldier, and drew a pension of $30 per month as such. At the time of his death he was drawing a pension of $50 per month.

On July 26, 1919, M. I. Nicholson executed a deed to R. G. Whitehead to a lot in the town of DeWitt. G. W. Botts testified that, as the agent of and attorney for his mother-in-law, he prepared the deed, but that "the deed was made to R. G. Whitehead unthoughtedly and through a mistake." The consideration for the deed was the sum of $1,000, of which $500 was paid before the delivery of the deed, and the remaining $500 was paid upon its delivery. The testimony is voluminous and in irreconcilable conflict as to who furnished the money with which these payments were made, and the decision of this case depends upon the determination of this question of fact. The chancellor found, in the decree from which is this appeal, that Mr. Whitehead had paid the purchase price

for the lot and was the owner thereof at the time of his death.

We think, however, that the preponderance of the testimony shows that the first payment of $500 was made with money furnished by Mrs. Whitehead. This money was derived from the sale of cattle owned by Mrs. Whitehead, supplemented by a loan made to her by G. W. Botts, her son-in-law. But we are also of the opinion that the second payment was made by Mr. Whitehead, at any rate, it was not made by Mrs. Whitehead in the manner in which her son, Edgar, testified it was made. His testimony was to the effect that the money for the second payment was derived from a loan which he procured on a policy of life insurance which he carried. It appears, however, that this second payment was made more than a year before this policy loan was negotiated. There was testimony to the effect that the second payment was not made until after the death of Mr. Whitehead. But the testimony of Nicholson, the grantor in the deed, appears to be decisive of this fact. He testified that he did not know Mrs. Whitehead in the transaction, and that the second payment of $500 was made within thirty days after the first payment. The consideration was paid in full upon the delivery of the deed, which recited that fact. No lien was reserved, nor was any security given or note taken. The deed was filed within a few days after its execution and delivery.

There was a four-room house on the lot, and Mr. and Mrs. Whitehead occupied it as their residence after its purchase. Mr. Whitehead died intestate July 31, 1920, and his widow continued her residence thereon until May 20, 1922, at which time she died intestate. Her son, R. H. Whitehead, had married, and become a doctor, and was residing in Gillette, a neighboring town. Her other children continued in possession of the property through tenants to whom they rented it. The rents amounted to only from $7.50 to $10 per month. The house was not always rented, nor were the rents always collected.

Dr. Whitehead testified that he had paid the taxes since the death of his mother. Mrs. Botts testified that she had paid the taxes for some of the years. The testi-

mony is in conflict as to who received the rents, although Dr. Whitehead admitted that Mrs. Botts had paid him two months' rent for each of three years. There is, however, no controversy in this case about the rents. Thus the matter continued until November, 1935, when Dr. Whitehead brought suit in ejectment to recover possession of the lot. He testified that he took this action when advised that Willie Mae Woodson, daughter of his sister, Mrs. Botts, was claiming to be the owner of the lot. Mrs. Botts and Edgar Eckles were also made defendants in this suit.

These defendants filed an answer and a motion to transfer to equity. They alleged in their answer that their mother had purchased the lot and paid for it, and they prayed that a resulting trust be declared. They also alleged that a family settlement had been effected between the three children of Mrs. Whitehead whereby, for a consideration of $250, Dr. Whitehead had agreed to convey his one-third interest in the lot as hereinafter stated.

Having reached the conclusion that Mrs. Whitehead paid one-half the purchase price, we think there was a trust to the extent of a half interest in the lot. A headnote in the case of *Kline* v. *Ragland,* 47 Ark. 111, 14 S. W. 474, reads as follows: "Where the purchase money for land conveyed to the husband is paid in whole or in part by the wife, she has an equity to have a trust declared and enforced against him to the extent of her payment." See, also, *Gilbert* v. *Gilbert,* 180 Ark. 596, 22 S. W. 2d 32; *Ellis* v. *Nickle,* 193 Ark. 657, 101 S. W. 2d 958.

The testimony does not establish that Mrs. Whitehead made the second payment. The trust may, therefore, be enforced upon only a half interest in the lot. The other half was owned by R. G. Whitehead at the time of his death. The court below found the fact to be "That at the time of the death of R. G. Whitehead on July 31, 1920, the said R. G. Whitehead was the owner of the above-described property." We disagree with this view to the extent stated.

The result of our finding is that R. G. Whitehead owned an undivided half interest in the lot, and this inter-

est was inherited by his son, Dr. R. H. Whitehead. Mrs. Whitehead owned the other half interest, which, upon her death, was inherited by her three children, this being one-third of a half or a one-sixth interest each. Having inherited a half interest from his father, Dr. Whitehead became the owner of this half interest, plus the one-sixth interest inherited from his mother, so that Dr. Whitehead became and is the owner of one-half, plus one-sixth, or two-thirds, and his brother, Edgar, owns one-sixth, and his sister, Mrs. Botts, owns one-sixth.

The parties labored under some misapprehension and uncertainty as to what their respective interests were. This is reflected by the following cross-examination of Dr. Whitehead. "Q. Your theory is that Edgar Eckles and Mrs. Botts have no interest in it at all? A. I understood that step-children did not inherit. Q. Wouldn't they inherit their mother's property? A. But mother didn't own the title. Q. Your mother died owning a third interest in it, didn't she? A. I thought my mother had the use of it while she lived. Q. That was your idea of the law? A. Yes, sir. Q. Don't you know, as a matter of law and common sense, that when your mother died, whose death occurred after your father, that she had one-third interest in the property and at her death her children inherited the property? A. No, sir."

The parties undertook to adjust their differences, and appellants say that a family settlement was made, which should be enforced. The testimony clearly shows that Dr. Whitehead agreed to accept $250 in cash for his interest in the lot; but the fact is established with equal certainty that the $250 was not paid. Appellants say the $250 was tendered, a fact which Dr. Whitehead denied. Appellants say that pursuant to the terms of the family settlement it was agreed that Dr. Whitehead should convey his interest in the lot to his sister, Mrs. Botts, or, at her request, to her daughter, Mrs. Woodson, and that the brother, Edgar, should also convey his interest in the lot to Mrs. Woodson, in consideration of which conveyances Mrs. Botts agreed to convey her interest in the farm which her mother had owned to her brother, Edgar, and

that deeds were prepared to effect this agreement, and executed and delivered by all the parties in interest except by Dr. Whitehead. These deeds were not offered in evidence, and it is not clear what disposition was to be made of the one-third interest which Dr. Whitehead had inherited in the farm owned by his mother.

A number of questions are discussed growing out of this family settlement, which may all be disposed of by saying that the court below found there was no family settlement, in which finding we concur.

A deed was prepared by Mr. Botts and delivered to Dr. Whitehead for execution. After keeping it in his possession for a few days, Dr. Whitehead returned the deed unexecuted and stated that his wife was unwilling to execute the deed until an adjustment had been made of the rents collected. It is certain that the deed was never executed.

We conclude, therefore, that the court below was justified in finding that there was no family settlement.

The court was of opinion also that the oral agreement was unenforceable as being within the statute of frauds. The case of *Haines* v. *McGlone,* 44 Ark. 79, sustains this view. See, also, *Rugen* v. *Vaughan,* 142 Ark. 176, 218 S. W. 205. See, also, the extended note to the case of *Walter* v. *Hoffman,* 267 N. Y. 365, 196 N. E. 291, 101 A. L. R. 919.

The decree of the court below will, therefore, be reversed, and the cause remanded with directions to enter a decree adjudging Dr. Whitehead to be the owner of a two-thirds interest in the lot and Mrs. Botts and her brother, Edgar Eckles, a one-sixth interest each.