WILSON *v.* WILSON.

4-8190 204 S. W. 2d 479

Opinion delivered September 29, 1947.

*John A. Hibbler* and *John L. Sullivan*, for appellant.

*DuVal L. Purkins*, for appellee.

MINOR W. MILLWEE, Justice. W. T. Wilson was a colored farmer and schoolteacher residing near Portland in Ashley county in 1916 when he married appellee, Annie Wilson, one of his former pupils. Wilson was 14 years older than appellee. They resided in Ashley county for about seven years where he continued to teach school three months of each year and conducted farming operations on rented lands. Appellee kept house, assisted in the farm work, and, at odd times, engaged in hairdressing for the colored women of the community. The husband transacted all their business affairs.

The couple moved to Warren in Bradley county, Arkansas, in 1923. In October, 1923, Wilson purchased two lots for $200 in block 5, Butler's Addition to the City of Warren, located near the mill of the Bradley Lumber Co. In 1924, a home was built on one of these lots where the parties resided until his death in 1944. In October, 1924, five lots were purchased in blocks 5 and 6, Butler's Addition, for $375. In November, 1926, five other lots were purchased in block 5, Butler's Addition. Construc-

tion of small three-room rent houses was begun in 1924 and by 1928 fifteen of these houses had been built on the lots in blocks 5 and 6 of Butler's Addition. In March, 1940, a purchase was made from Mattie Gould of lots 16 and 17, Bell's Subdivision of the E. N. Wilson Addition, and lot 10, block 4, Butler's Addition, to the City of Warren, upon which seven rent houses were located. In March, 1941, lots 7 and 8, block 6, Butler's Addition to the City of Warren were purchased from Leanna Winters for $300. There were two rent houses on these lots which were paid for from rentals. W. T. Wilson was made grantee in the deeds evidencing all these purchases.

W. T. Wilson continued to teach in the colored schools at Warren from 1924 until his retirement in 1937. His salary was $75 a month for eight months during most of this period. He also looked after the rental of the tenant houses. After his retirement from the teaching profession, he drew a small monthly retirement pay until his death in 1944. Appellee kept house and for several years engaged in hairdressing. She also kept a few boarders who were employed by the lumber company. She assisted her husband in the collection of rentals and the earnings of both were placed in a common fund administered by the husband.

W. T. Wilson inherited 40.17 acres of land in Ashley county from his father's estate following the death of his mother in 1936. In October, 1943, he executed a lease of this land to William Bozeman for the years 1944, 1945 and 1946. This lease provided for annual rentals of $200, payable to Wilson, and further stipulated that in the event of Wilson's death during the term of the lease such rentals should be paid to appellee.

.W. T. Wilson died September 1, 1944, childless and intestate. He was survived by appellee, his widow, and the appellants who are the brothers and sisters and other collateral heirs of deceased. Appellants are all of age. The deceased owed no debts at the time of his death and owned little personal property. Appellee received $150

from one life insurance policy and another for $55 was payable to the estate of the deceased.

Efforts of the parties to effect an amicable settlement of their respective interests in the estate failed, and appellee brought this suit in chancery court alleging that she was entitled to the rentals due under the three-year lease of the 40 acres in Ashley county owned by her husband at the time of his death; that her husband was made sole grantee in all the deeds to the Warren properties without her knowledge until after his death; that one-half of the purchase price of these properties was furnished by appellee and purchase made with the intent and understanding between appellee and her husband that the property would belong to them jointly; and that a resulting trust should be declared in appellee's favor to the extent of her payment of one-half the purchase price in all the Warren property. Appellee prayed that she be adjudged the owner of the $600 rentals due on the lease of the Ashley county 40-acre tract and that her life estate be quieted in said lands. She also prayed that her title to a three-fourths undivided interest in fee in the Bradley county property be quieted and confirmed.

In their answer, appellants admitted that all the deeds to the Warren property were made to W. T. Wilson as grantee, and denied the other material allegations of the complaint. Appellants prayed for an accounting of rents, the appointment of a receiver, and for distribution of the respective interests of the parties according to the law of descent and distribution.

The cause was submitted to the chancellor upon the pleadings, stipulations and the depositions of numerous witnesses whose testimony comprises four of the six volumes of the transcript. A decree was entered on July 8, 1946, adjudging appellee to be the owner of the $600 rentals accruing under the lease of the Ashley county lands and quieting her life estate therein. In addition to the undivided one-half interest with which appellee became endowed as a widow in the three lots purchased from Mattie Gould, the court decreed a resulting trust in her

favor to an undivided one-half of the one-half interest owned by her husband at the time of his death in this property. The court denied appellee's prayer that a resulting trust be declared in her favor in the other Warren properties. Appellants were charged with 70 per cent. of the costs and appellee with 30 per cent. There were several other matters determined by the decree which are not involved in this appeal.

Appellants have appealed from so much of the decree as holds appellee entitled to the $600 rental and establishes a resulting trust in the property acquired from Mattie Gould. They have also appealed from that part of the decree which makes them liable for 70 per cent. of the court costs.

Appellee has cross appealed from that part of the decree which denies a resulting trust in her favor in the remainder of the Warren properties.

## MOTION TO DISMISS

Appellee has filed with her brief a motion to dismiss the appeal for appellants' failure to properly abstract the record in compliance with Rule IX (b) of this court. There are several obvious defects in the abstract furnished by appellants. It is unnecessary to point them out since appellee has cured this deficiency and waived her motion to dismiss by supplying us with a correct abstract of the record. *Springfield* v. *Steen*, 99 Ark. 241, 138 S. W. 453; *Sears* v. *Scott*, 210 Ark. 392, 197 S. W. 2d 33.

In *Springfield* v. *Steen, supra,* the court said: "Where the appellee has made a proper abstract, which is accepted by appellant as correct, or to which no objection is made, and then asks us to affirm the judgment for noncompliance with Rule 9 by appellant, we have denied his motion, and have taxed appellant with the additional costs because appellee has performed the duty to the court which is required of appellant." So here appellants will be charged with the additional costs incurred by appellee in abstracting the record, and appellee's motion to dismiss is denied.

## RENTALS

Appellants contend that the chancellor erred in finding appellee entitled to the $600 in rentals under the lease of the 40-acre farm in Ashley county, the ancestral estate of W. T. Wilson, deceased. This lease was executed by W. T. Wilson in October, 1943, and contains the following provision: "It is expressly understood and agreed by and between lessor and lessee that in the event of the death of lessor during the term of this contract, such rentals as may be due from lessee under the terms of this contract shall be paid to Annie Wilson, wife of lessor." Appellants insist that appellee is merely made the agent of her husband's estate for collection of the rental moneys in the event of his death before maturity of the lease. If such had been the intention of the parties, it would have been a simple matter to have added this restriction on the rights of appellee in the wording of the lease.

We think the trial court correctly construed the terms of this paragraph of the lease and that appellee became the owner of the rentals accruing after the death of her husband. The situation is analogous to that where a deed conveys property, but reserves its use and possession for the lifetime of the grantor. In *Hatcher* v. *Buford,* 60 Ark. 169, 29 S. W. 641, 27 L. R. A. 507, this court said: "We think the better doctrine upon the transfer of the title to gifts *causa mortis* is that which accords with Justinian's definition, and recognizes the subject-matter of the gift as becoming the property of the donee in the event of the donor's death, *i. e.,* the donor's death is a condition precedent to the vesting of the title to the thing given in the donee. This seems to be the rule adopted by the English courts of chancery, and is supported also by eminent American courts and text writers." See, also, *Ammon* v. *Martin,* 59 Ark. 191, 26 S. W. 826; *Gross* v. *Hoback,* 187 Ark. 20, 58 S. W. 2d 202.

Another clause of the lease provides that it should become inoperative at the discretion of the survivor in case of the death of either the lessor or his wife. When the lease is considered in its entirety, and in connection

with the congenial and cooperative relationship that existed between the lessor and appellee throughout their married life, it is susceptible of no other construction than that given by the trial court, and his finding on this issue will not be disturbed.

## RESULTING TRUST

Appellee sought to have a resulting trust declared in her favor to the extent of one-half of the undivided one-half interest of her deceased husband in all the Warren properties. "Such a trust cannot be established by a slight preponderance of the testimony, nor anything short of evidence that is clear, convincing and satisfactory." *Keith* v. *Wheeler,* 105 Ark. 318, 151 S. W. 284. The applicable rule was stated by Chief Justice HART, speaking for the court, in *Kerby* v. *Feild,* 183 Ark. 714, 38 S. W. 2d 308, as follows: "In order to constitute a resulting trust, the purchase money or a specified part of it must have been paid by another or secured by another at the same time, or previously to the purchase, and must be a part of the transaction. In other words, the trust results from the original transaction at the time it takes place and at no other time, and it is founded upon the actual payment of money and upon no other ground." In *Kline* v. *Ragland,* 47 Ark. 111, 14 S. W. 474, this court held (headnote 1): "Where the purchase money for land conveyed to the husband is paid in whole or in part by the wife, she has an equity to have a trust declared and enforced against him to the extent of her payment."

Appellee alleged in her complaint and sought to prove that one-half the price of the lots first purchased in Bradley county was furnished by her from the proceeds of the sale of 13 head of cattle given to her by her father before the parties moved to Warren. She testified that she turned the cattle over to her husband who used the proceeds of the sale in purchasing the lots. She does not attempt to say how much the cattle sold for, or that she contributed any specified sum toward the purchase price of the lots. Her testimony relative to the sale of cattle was disputed by several neighbors of her father

who testified that the latter was a poor tenant farmer who never owned more than one or two head of livestock at any time.

There was a large volume of testimony on this issue and it would serve no useful purpose to attempt to detail it here. After a careful consideration of this evidence we are of the opinion that it fails to show clearly and convincingly that there was a payment made by appellee, or an agreement with reference thereto, at the time of the purchase, or prior thereto, in connection with the 1923, 1924 and 1926 purchases. Appellee relies upon such cases as *Gainus* v. *Cannon*, 42 Ark. 503; *Leslie* v. *Bell*, 73 Ark. 338, 84 S. W. 491; and *Eckles* v. *Whitehead*, 196 Ark. 680, 119 S. W. 2d 550. In the Gainus case the court refused to declare a resulting trust and, in an appraisal of the evidence offered to support the widow's claim, said in part: "An examination of the evidence, which has been made under a very natural tendency to support her claim against the collateral heirs of her husband, fails to disclose any definite, clear agreement, on his part, to exercise and hold this fund as her trustee for her separate use. . . . Much of it consists of casual expressions with regard to his wife's ownership, which are commonly used by husbands with regard to property obtained through the wife, or which has been furnished by the husband with a special view to the wife's comfort or gratification. It is the conventional language of domestic affection, and does not ordinarily mean to imply legal or equitable title. . . . The proof that the husband received the money under a self-imposed trust to convert it into a home for her separate use is too indefinite and unsatisfactory to warrant a reversal of the decree on this point." In the other cases cited by appellee it was clearly shown that either the husband purchased the property with funds derived from his wife's separate estate or that she actually paid a definite portion of the purchase price.

Appellants insist that the trial court erred in declaring a resulting trust in appellee's favor in the purchase from Mattie Gould in 1940. At the time of this purchase

both husband and wife had retired and their primary source of income was the rentals from the tenant houses. During the years intervening since 1926, appellee had engaged in dressing hair and keeping boarders and contributed regularly to the family earnings in an amount equal to or greater than her husband. She also assisted in the renting of the properties. The grantor in the deed, Mattie Gould, testified that she sold the property to both Wilson and his wife and it was understood that the deed would be made to both of them. She had the deed prepared and thought it had been made to both. They paid for the property with the proceeds of a loan from an association which was secured by the joint obligation of both parties. This loan was discharged by the rentals from tenants of the houses on the property. We think this testimony, when considered in connection with other evidence of statements made by the deceased about the time of the purchase, was sufficient to sustain the finding of the chancellor that appellee furnished one-half the purchase price of the property, and that a trust resulted to that extent in her behalf.

## COURT COSTS

Appellants insist that the trial court erred in assessing 70 per cent. of the court costs against them and 30 per cent. against appellee. Appellants cite § 10530, Pope's Digest, relating to costs in partition suits which reads: "The costs of the division shall be apportioned among the parties in the ratio of their interests, and the costs arising from any contest of fact or law shall be paid by the party adjudged to be in the wrong." The instant suit involved not only a partition of the property, but the setting aside of dower and homestead and awarding statutory allowances. It also involved the right to rentals from the ancestral estate and the issue of resulting trust. We have uniformly held that the matter of taxation of costs in chancery cases is within the discretion of the chancellor and unless there is an arbitrary abuse of power on his part we will not disturb the award. *Mt. Nebo Anthracite Co.* v. *Martin*, 86 Ark. 608, 111 S. W.

1002; *Penix* v. *Pumphrey,* 125 Ark. 332, 188 S. W. 816. Appellants say they offered appellee what she was entitled to receive under the statutes of descent and distribution prior to the beginning of the suit. But they did not offer the $600 in rentals nor recognize her right to a resulting trust in a part of the property. Appellants have been "adjudged to be in the wrong" on these issues, and we cannot say that the chancellor abused his discretion in placing the greater burden of the costs upon them.

It follows that the decree of the trial court must be affirmed on both the direct appeal and cross appeal. The costs in this court will be apportioned as in the trial court and appellants will be taxed with the additional expense incurred by appellee in abstracting the record.