Boyd ADAMS, d/b/a Boyd Adams Livestock Commission Company, and Western Casualty and Surety Company, Appellants,

v.

Willis GREESON, d/b/a Montgomery County Auction, Appellee.

No. 6784.

Boyd ADAMS, d/b/a Boyd Adams Livestock Commission Company, and Western Casualty and Surety Company, Appellants,

v.

Hiram WALL, d/b/a Hiram Wall Sales Company, Appellee.

Nos. 6783 and 6784.

United States Court of Appeals
Tenth Circuit.

Feb. 17, 1962.

Robert J. Bell and A. James Gordon, McAlester, Okl., were on the brief for appellants.

Lowell E. Clifton, Oklahoma City, Okl., and Jeptha A. Evans, Booneville, Ark., were on the brief for appellees.

Before BRATTON, LEWIS, and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

These actions were to recover damages for alleged conversion of livestock. Willis Greeson instituted one of them against Boyd Adams and Western Casualty and Surety Company, and Hiram Wall instituted the other against the same defendants. The cases were tried to the court without a jury. The evidence was without substantial conflict. It disclosed these facts. Using the trade name Montgomery County Auction, Greeson was engaged in the livestock commission business at Mount Ida, Arkansas; using the trade name Hiram Wall Sales Company, Wall was engaged in a like business at Booneville, Arkansas; and operating under the trade name Boyd Adams Livestock Commission Company, Adams was similarly engaged in business at McAlester, Oklahoma. Adams was licensed and bonded under the provisions of the Packers and Stockyards Act, 42 Stat. 159, 7 U.S.C.A. § 181 et seq. Western Casualty and Surety Company executed as surety the bond given by Adams. D. F. Pierce was engaged in the business of buying and selling livestock. Most of his purchases were made at auction sales; and in some if not most instances livestock which he purchased in that manner was sold through livestock agencies.

On January 22, 1960, Pierce attended Greeson's auction sale and purchased forty six head of cattle. Four days later, he attended Wall's auction sale and purchased twenty eight head of cattle. In payment for such purchases, Pierce gave Greeson and Wall each a check drawn on a bank at Heavener, Oklahoma. Wall gave to Pierce a "BUYER'S BILL" at the bottom of which it was stated in substance that customers purchasing livestock through the company by check or draft expressly agreed that title did not pass until the fund was actually received on such check or draft. Pierce caused both lots of cattle to be promptly transported to McAlester and there delivered to Adams in his pens. At the direction of Pierce, Adams sold the cattle and accounted to Pierce for the proceeds. After each sale and accounting by Adams, the check given by Pierce for the purchase of the cattle was dishonored.

Judgment was entered for plaintiff in each case, and defendants appealed.

■ Jurisdiction of the court to entertain the actions is challenged. The ground of challenge is that there was diversity of citizenship but less than ten thousand dollars involved in each case. The Packers and Stockyards Act, supra, expressly empowers the Secretary of Agriculture to require reasonable bonds from marketing agencies and dealers to secure the performance of their obligations. 7 U.S.C.A. § 204. In the exercise of such power, the Secretary required every market agency and dealer to give such bond. 9 C.F.R. § 201.29. And by further regulation, the Secretary required such bond to contain a provision that any person damaged by failure of the principal to comply with the condition clauses contained therein may maintain suit to recover on the bond even though such person is not a party named in such bond. 9 C.F.R. § 201.33. The bond executed by the defendants in each of these cases was executed pursuant to such requirement. And it is provided by 28 U.S.C. § 1352 that the district courts of the United States shall have original jurisdiction, concurrent with state courts, of any action on a bond executed under any law of the United States. Less than ten thousand dollars was involved in each case, but since the bond upon which recovery was sought was executed pursuant to an authorized regulation promulgated by the Secretary, the court had jurisdiction under 28 U.S.C. § 1352 to entertain the actions. Hartford Accident and Indemnity Co. v. Baldwin, 8 Cir., 262 F.2d 202.

■ The Packers and Stockyards Act does not undertake to fix the respective rights of the parties to a transaction in which the owner of livestock delivers possession thereof to a purchaser who gives in payment therefor a worthless check. The act does not have the effect of altering in part or superseding in

whole the respective rights of the immediate parties under state law to a transaction of that kind. Sig Ellingson & Co. v. De Vries, 8 Cir., 199 F.2d 677, certiorari denied, 344 U.S. 934, 73 S.Ct. 505, 97 L.Ed. 719; Sig Ellingson & Co. v. Butenbach, 8 Cir., 199 F.2d 679, certiorari denied, 344 U.S. 934, 73 S.Ct. 505, 97 L.Ed. 719. And under the law of Arkansas, one who obtains possession of personal property by giving to the owner thereof a worthless check in payment therefor acquires a defeasible title to such property. Pingleton v. Shepherd, 219 Ark. 473, 242 S.W.2d 971. Pierce acquired a defeasible title to the livestock which he obtained from Greeson and Wall and his title had not been voided at the time Adams received and sold such livestock. Adams acted without notice that Pierce had obtained possession of the livestock by giving worthless checks and therefore had only a voidable title. And in such circumstances, the law of Arkansas does not vest in Greeson and Wall the right to assert as against Adams ownership of the livestock. In this connection, we do not overlook the rule in Arkansas that where a commission factor receives and sells livestock which has been stolen, he is liable to the owner. Eureka Springs Sales Co. v. Ward, 226 Ark. 424, 290 S.W.2d 434. But it is manifest that no situation of that kind is presented here.

Since Adams received and sold the livestock in Oklahoma, the question whether as a result he became liable in damages to Greeson and Wall for conversion must be determined by the law of that state. Pierce had attended many auction sales conducted by Greeson at his place of business, had made many purchases at such sales, and had given checks for previous purchases. He had attended at least one sale at Wall's place of business, and had made at least one purchase. At the time of the transactions now under review, Greeson and Wall knew that he was a dealer on the market and that in all probability the livestock being delivered to him would be quickly placed in the channels of commerce. Adams also knew that Pierce was a dealer in livestock on the market. In the course of about two years prior to these transactions, he had sold for Pierce many lots of livestock. The ordinary procedure which had been followed in such prior transactions was that Pierce gave to the owner from whom he purchased livestock his personal check or sight draft in payment therefor drawn on the bank at Heavener; as a means of covering such a check or sight draft, he gave the bank at Heavener a sight draft drawn on Adams through a bank in McAlester; the bank in McAlester advised Adams when the draft arrived; Adams directed the bank to pay the draft if the livestock was then in his pens; Adams sold the livestock; and then accounted to Pierce for the proceeds of the sale. No difficulty had arisen in the course of the previous transactions. In the two instances giving rise to this litigation, Adams acted without any notice or suggestion that Pierce had acquired possession of the livestock by giving worthless checks in payment therefor. He acted without any notice or knowledge of any irregularity in the method or means by which Pierce acquired possession of the livestock. He did not know that Greeson or Wall or anyone other than Pierce had any right or interest in the livestock. As a conventional brokerage factor acting in the due course of business, he did not breach any provision of the Packers and Stockyards Act, any provision in an applicable regulation of the Secretary of Agriculture, or any provision in the bond given pursuant to the requirement of the Secretary. And he is not liable under the substantive law of Oklahoma for conversion. Kent v. Wright, 198 Okl. 103, 175 P.2d 802.

The judgments are severally reversed and the causes remanded with directions to enter judgments for the defendants.