EUREKA SPRINGS SALES COMPANY *v.* WARD.

5-963                                          290 S. W. 2d 434

Opinion delivered May 21, 1956.

*J. E. Simpson,* for appellant.

*J. B. Milham* and *H. G. Leathers,* for appellee.

ED F. McFADDIN, Associate Justice. This appeal involves an auctioneer's liability arising from the sale of some stolen cattle.

The appellant, Eureka Springs Sales Company, is a domestic corporation and operates a sales barn in Eureka Springs. On August 28, 1954, a man, giving his name as Clyde Williams, transported six cows to the barn of appellant for sale at auction that day. Four of the cows, which he said belonged to Edgar Ray, were sold for a gross of $418.63; and, after deducting a commission of $13.56, appellant's check—drawn on the Bank of Eureka Springs for the net of $405.07 and payable to Edgar Ray—was delivered to the said Clyde Williams. The other two cows, which Clyde Williams said belonged to

him, were sold for $183.66; and, after deducting $6.01 commission, a check for $177.65 was delivered by appellant to the said Clyde Williams.

Later, in the course of the auction sale, Clyde Williams bought two cows for a total of $124.00; and, at his suggestion, he redelivered to the appellant its check for $177.65 and, in return, received appellant's check for $53.65 drawn on the Bank of Eureka Springs, and also received the two purchased cows, which he loaded in his truck and took with him and proceeded—it later developed—from Eureka Springs to Harrison. At Berryville, enroute, Clyde Williams stopped at the grocery store of Shirley Williams and endorsed the said $53.65 check and received therefor some groceries and the balance in cash. Shirley Williams deposited the check in his bank and it was duly paid by the Bank of Eureka Springs when presented.

Clyde Williams proceeded from Berryville to Harrison, and there dropped his *alias* and became Edgar Ray, which was his real name. He had some time previously purchased a truck from J. P. Williams, a used car dealer in Harrison, and owed a balance of $325.00 on it, for which title had been retained. On August 28, 1954, Edgar Ray tendered to J. P. Williams appellant's said check of $405.07, and received therefor a receipt for the $325.00 balance due on the truck. J. P. Williams cleared the title to the truck and gave Ray $80.07 balance in cash. J. P. Williams deposited the $405.07 check in the Security Bank of Harrison; and, when it reached Eureka Springs in due banking channels, payment was stopped by the appellant.

The reason payment was stopped was because the six cows which Ray (alias Williams) had taken to the Eureka Springs Sales Company had been stolen from the appellee, Charles J. Ward, a farmer in Oklahoma. Ward had discovered the theft on August 28, 1954, and had diligently traced the cattle to the appellant's sales barn. Ray was apprehended and remained in jail in Harrison for some time; and while there he delivered the two cows (for which he had bid $124.00 at appellant's

sale, as aforesaid) to Shelby Morris to apply on a past due grocery bill. In due time, Ray was tried in Oklahoma and convicted for cattle theft and sentenced to the Oklahoma penitentiary, where he was a prisoner at the time of the trial below.

Ward, the owner of the six cows, sued appellant, Eureka Springs Sales Company, for $602.29, the amount for which appellant sold the six cows at auction. Appellant tendered $602.29 into court, and interpleaded Shirley Williams, J. P. Williams and Shelby Morris, and asked affirmative relief against each of them. The various parties set up their respective claims and defenses; and trial in the Chancery Court resulted in a decree adverse to the appellant and in favor of each of the other parties; and from that decree appellant brings this appeal.

I. *Appellant's Liability To Ward.* The Trial Court was correct in rendering judgment of $602.29 for Ward. There was evidence that the six cows might have been worth more, but Ward claimed only the amount appellant had received from the sale of the cattle, which sale was an act of conversion.

The general rule—as regards all personal property except money and negotiable paper—is, that a purchaser from a thief acquires no title against the true owner, in the absence of limitations and estoppel (and neither of these is involved in this case). Section 68-1423 Ark. Stats., being a portion of the Uniform Sales Act, is recognition of such rule. In the early case of *Phelan* v. *Dalson,* 14 Ark. 79, this Court said:

". . . it is clear that where property has been obtained from the owner by a felonious act, his unqualified ownership is not in the least changed, and he may peaceably take it, in whose hands soever he may find it." To the same effect see *Russell* v. *Brooks,* 92 Ark. 509, 122 S. W. 649; and see also 46 Am. Jur. 622. In 42 Am. Jur. 227, in discussing theft of personal property as affecting the owner's title and civil rights as against an innocent purchaser from the thief, the holdings are summarized:

"Even though such a purchaser may be treated as having title and the right to their possession as against everyone but the rightful owner, a sale by the thief or by any person claiming under the thief does not vest any title in the purchaser as against the owner, though the sale was made in the ordinary course of trade and the purchaser acted in good faith."

Thus, Ward never lost title to his cows; and appellant[1], by selling them at auction, became liable to Ward since such sale was a conversion. In 5 Am. Jur. 489, in discussing the liability of an auctioneer, there are these statements:

"The authorities are practically unanimous in holding that an auctioneer who sells property in behalf of a principal having no title thereto is personally liable to the true owner for conversion, regardless of whether he had notice of the true owner's title, or whether he acted with the utmost good faith in total ignorance thereof . . . The fact that the auctioneer has sold the goods and turned over the proceeds to his principal in innocence and good faith affords him no protection. The rule of liability on the part of the auctioneer applies where he innocently sells stolen property; . . ."

In an Annotation in 20 A. L. R. 135, many cases are cited[2] to sustain this text:

"An auctioneer who makes sale of property which does not belong to the one employing him, and passes the title to the purchaser, is personally liable to the true owner for the conversion."

Appellant, by selling Ward's cattle, became liable to him for $602.29 for the conversion; and the Chancery Court was correct in so holding.

II. *Appellant's Liability To J. P. Williams.* The Chancery Court was correct in rendering judgment

---

[1] Act 206 of 1937 (now found in § 78-901 *et seq.*, Ark. Stats.) is an attempt to regulate the moving of animals. Then we have two recent cases involving sales of stolen animals: see *Oliver* v. *Eureka Springs Sales Co.*, 222 Ark. 94, 257 S. W. 2d 367; and *Stanley* v. *Eureka Springs Sales Co.*, 223 Ark. 877, 269 S. W. 2d 319.

[2] See also 53 Am. Jur. 837, "Trover and Conversion," § 41.

against appellant in favor of J. P. Williams for $405.07, being the amount of the check on which appellant had stopped payment. As heretofore stated, the rule—that a thief can convey no title to stolen personal property—has no application to a thief transferring money or negotiable paper to a *bona fide* purchaser for value without notice. In 42 Am. Jur. 227-228, the text reads:

"A different rule, however, applies in the case of stolen money and negotiable securities, including travelers' checks . . . The rule is well settled that a bona fide purchaser of a negotiable bill, bond, or note, although he buys from a thief, acquires a good title, if he pays value for it, without notice of the infirmity of his vendor's title."

And again in 8 Am. Jur. 331, the text reads:

"It is familiar law that one in possession of chattels by theft can convey no title to an innocent purchaser. Coin and bank bills are excepted from this rule, however. As to those, even if feloniously obtained, the holder can convey a good title to an innocent purchaser. From the highest considerations of public policy and of commercial necessity, the law also excepts from the rule negotiable instruments acquired for value in good faith before maturity and without notice."

In *Mo. Pac. Rd. Co.* v. *M. M. Cohn Co.*, 164 Ark. 335, 261 S. W. 895, the Railroad Company had delivered a check to an imposter, who endorsed the check in the name of the payee and delivered the check to M. M. Cohn Company in return for merchandise of value. This Court held that the Railroad Company was liable to Cohn Company for the amount of the check; and that case is ruling here. J. P. Williams, in good faith and without notice, parted with his retained title to the truck and with money, all on the faith of appellant's check. Williams duly deposited the check, and appellant is liable to Williams for the amount of the check. See also Annotations in 22 A. L. R. 1228; 52 A. L. R. 1326; and 112 A. L. R. 1435.

III. *Appellant's Claim Against Shirley Williams.*
The Chancery Court was correct in refusing to allow
appellant to recover from Shirley Williams for the
amount of the check of $53.65. What has been said re-
garding the J. P. Williams claim applies here also. Shir-
ley Williams had cashed appellant's check and received
the money thereon; and appellant cannot recover from
**Shirley Williams.**

IV. *Appellant's Claim Against Shelby Morris.* The
Chancery Court was in error in refusing to allow appel-
lant to recover from Shelby Morris the two cows (valued
at $124.00) which Morris had received from Edgar Ray
to apply on a past due grocery bill while Ray was in
jail charged with cattle theft. Ray—alias Williams—
acquired these two cows from appellant by an act of
fraud: i.e., he represented himself to be the owner of
the two stolen cows that had been sold for $177.65; and
then redelivered the check for that amount to appellant
to pay for the two cows here involved, worth $124.00.
Thus Ray had acquired possession of the two cows (val-
ued at $124.00) by a fraudulent act. Our quotation from
*Phelan* v. *Dalson,* 14 Ark. 79, applies here:

". . . it is clear that where property has been
obtained from the owner by a felonious act, his unquali-
fied ownership is not in the least changed, and he may
peaceably take it, in whose hands soever he may find it."
See *Russell* v. *Brooks,* 92 Ark. 509, 122 S. W. 649; and
see also 46 Am. Jur. 622 and 42 Am. Jur. 227.

Appellant could have recovered these two cows from
Ray, and certainly Ray could pass no good title to Shel-
by Morris. A recent case applying the aforesaid prin-
ciple is *Dobbins* v. *Martin Buick Co.,* 216 Ark. 861, 227
S. W. 2d 620. Therefore, we reverse so much of the
Chancery decree as refused appellant recovery against
Shelby Morris; and remand that angle of the case to
the Chancery Court with directions to enter a decree in
favor of appellant as against Shelby Morris. In all
other respects, the decree of the Chancery Court is af-
firmed.

V. *Costs.* Ward complains of the order of the Chancery Court that required him to pay all the costs of that Court. The Chancery Court has discretion in adjudging costs. *Penix* v. *Pumphrey,* 125 Ark. 332, 188 S. W. 816; *Lyle* v. *Latourette,* 209 Ark. 721, 192 S. W. 2d 521; *Thomas* v. *Smith,* 215 Ark. 527, 221 S. W. 2d 408. Ward has not cross-appealed; so we cannot consider his argument that the Chancellor abused judicial discretion in the matter of costs.

As regards all of the costs accruing after the decree below, we adjudge the same one-fifth against Shelby Morris and four-fifths against the appellant.

Justices George Rose Smith and Robinson concur.

George Rose Smith, J., concurring. With respect to the two cows transferred to Morris, Justice Robinson and I would rest the decision on a different ground from that adopted by the majority. It is true that one who steals a chattel acquires no title that he can transfer to another, but it is also true that one who obtains property merely by fraud or trick acquires a voidable title that he can pass to an innocent purchaser for value. *Pingleton* v. *Shepherd,* 219 Ark. 473, 242 S. W. 2d 971. Morris, however, is not such a purchaser, for he merely credited the value of the cattle upon a pre-existing debt, which does not constitute the giving of value. *Hamilton* v. *Rankin,* 108 Ark. 552, 158 S. W. 496. Hence Morris is not entitled to retain the animals in any event, and it becomes unnecessary to determine whether Ray's manipulations amounted to larceny or simply to fraud.