Gil LANDERS, d/b/a Big Daddy's Pawn Shop *v.* Ken JAMESON

03-114 132 S.W.3d 741

Supreme Court of Arkansas
Opinion delivered December 4, 2003

*The McHughes Law Firm*, by: *Josh E. McHughes* and *Becky A. McHughes*, for appellant.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *M. Stephen Bingham*, for appellee.

*Hyden, Miron & Foster, PLLC*, by: *Lyle D. Foster* and *Danny W. Broaddrick*, for *amicus curiae* Arkansas Pawnbrokers' Association.

Robert L. Brown, Justice. This appeal involves the constitutionality of two Arkansas statutes: Ark. Code Ann. §§ 18-27-202 and -203 (1987). Appellant Gil Landers d/b/a Big Daddy's Pawn Shop contends that the statutes are unconstitutional, as applied to him, because no notice and no hearing were afforded to him prior to the time that his property interest was impaired. Appellee Ken Jameson, the true owner of the property in question, asserts that the statutes adequately provided due process protection to the Pawn Shop. We disagree in light of *Fuentes v. Shevin*, 407 U.S. 67 (1972), and our own case of *McCrory v. Johnson*, 296 Ark. 231, 755 S.W.2d 566 (1988). We agree with the Pawn Shop that the statutes are unconstitutional, as applied to it. We reverse and remand for entry of a judgment consistent with this opinion.

The pertinent facts are not in dispute. In June 1998, Jameson noticed that a ring and two bracelets were missing from his home in Little Rock. In July 1998, he reported that the jewelry was missing to the Little Rock Police Department, which located similar bracelets at the Pawn Shop in Little Rock and placed a hold on them so that they could not be sold or released. The Police

Department notified Jameson, and he subsequently identified the jewelry as his. On November 5, 1998, Jameson provided the Pawn Shop with a sworn affidavit in which he averred that two bracelets pawned at Appellant's shop had been wrongfully taken from his house. The Pawn Shop refused to return the bracelets, which caused Jameson to file an action in Little Rock Municipal Court (now District Court) on November 10, 1998.

On February 2, 1999, Jameson appeared *pro se*, and the Pawn Shop appeared with its attorney at the municipal court hearing. Following the hearing, the municipal court issued its judgment on February 5, 1999, in which it found, by a preponderance of the evidence, that the jewelry in the Pawn Shop's possession was owned by Jameson; that the items were pawned by Linda Stewart, an employee of his housekeeper; and that the items were taken from his home without permission. The court ordered that the items be returned to Jameson after the Police Department released its hold.

The Pawn Shop appealed the judgment to Pulaski County Circuit Court. Jameson also filed a demand for attorney's fees and costs with the circuit court. He described the legal history of the case and quoted §§ 18-27-202 and -203(b) in support of his demand. He then urged the court to award costs and attorney's fees incurred at the conclusion of the appeal. The Pawn Shop responded that the statutes in question were unconstitutional and that Jameson was not the true owner. The circuit court entered judgment in favor of the Pawn Shop and found that Jameson had not met his burden of proving by a preponderance of the evidence that the jewelry was his property. Jameson appealed that judgment to the court of appeals.

In February 1999, the Police Department released its hold on the jewelry. On May 24, 2000, the court of appeals held in an unpublished opinion that the circuit court had clearly erred in failing to find that Jameson was the true owner of the jewelry and in not awarding costs and attorney's fees to Jameson. *Jameson v. Landers*, CA 99-1273 (Ark. App. May 24, 2000) (*Landers I*). The court of appeals further held that Ms. Stewart was jointly and severally liable for an amount equal to the value of the jewelry at the time of the conversion and reversed the circuit court's judgment and remanded the case to that court.

On June 9, 2000, the Pawn Shop filed a petition for rehearing with the court of appeals and claimed that the two issues of attorney's fees and the constitutionality of the statutes had not been ruled on by the circuit court and, therefore, were not issues on appeal. The Pawn Shop further claimed that the court of appeals' direction to the Pawn Shop to pay Jameson attorney's fees was in effect a ruling on the constitutionality of the statutes and that this denied the Pawn Shop its day in court on that issue. On June 28, 2000, the court of appeals denied the petition without comment.

On May 30, 2000, Jameson filed a confirmation of attorney's fees and costs in circuit court pursuant to § 18-27-203. The circuit court subsequently held a hearing on the attorney's fees issue, and at that hearing, the Pawn Shop again asserted that the statutes were unconstitutional. The circuit court concluded that the court of appeals had implicitly held the statutes to be constitutional by its denial of the petition for rehearing. As a result, the circuit court entered judgment for Jameson and ordered that the bracelets be returned to him, that the Appellant pay $2,773.87 if the bracelets were not returned in the same condition as when they were exhibited at trial, and that the Pawn Shop pay Jameson's costs and attorney's fees in the amount of $13,434.75.

The Pawn Shop appealed, and on April 3, 2002, the court of appeals issued an opinion not designated for publication in which it found that the circuit court's conclusion on remand that the court of appeals had implicitly held the statutes to be constitutional was clearly erroneous. *Landers v. Jameson*, CA 01-269 (Ark. App. April 3, 2002) (*Landers II*). Because of this, the court of appeals reversed and remanded the issue of the constitutionality of §§ 18-27-202 and -203 back to the circuit court for determination. The court of appeals expressed no opinion as to the effect of the Pawn Shop's failure to notify the Attorney General that it was raising an issue of the statutes' constitutionality pursuant to Ark. Code Ann. § 16-111-106 (1987). The court of appeals did not decide the reasonableness of the attorney's fees, because it concluded that the determination of the fees depended on the outcome of the Pawn Shop's attack on the constitutionality of the statutes.

On April 12, 2002, the Pawn Shop filed a motion to release the supersedeas bond in the amount of $16,000.00 posted by the Pawn Shop pending appeal. Also on that date, the Pawn Shop confirmed to the circuit court that, pursuant to § 16-111-106, it

had notified the Attorney General's office of its constitutional challenge to §§ 18-27-202 and -203. Jameson objected to the release of the supersedeas bond and said in his response that "the appeal issue is still unresolved, [Appellant] having filed a Petition for Review by the Arkansas Supreme Court on April 17, 2002." Jameson also stated that the Pawn Shop failed to notify the Attorney General pursuant to § 16-111-106 before the remand and, thus, failed to mount a proper constitutional challenge under *Reagon v. City of Piggett*, 305 Ark. 77, 805 S.W.2d 636 (1991). This court denied the Pawn Shop's petition for review.

On June 12, 2002, the Attorney General's office issued a letter that it had reviewed the Pawn Shop's pleadings and said it declined to intervene to defend the constitutionality of the statutes at issue. On July 1, 2002, Jameson moved for summary judgment in circuit court and claimed that the court of appeals remanded this case so that the circuit court could issue a ruling on the Pawn Shop's challenge to the statutes' constitutionality and the Pawn Shop's failure to comply with § 16-111-106. Jameson emphasized that the court of appeals found that the Pawn Shop neither asserted nor preserved its constitutional challenge to the subject statutes in an appropriate manner. He also claimed that the Pawn Shop lacked standing to argue the statutes' constitutionality, because it did not raise the issue until after the parties had been afforded a trial before the municipal court.

On July 2, 2002, the circuit court ordered that the supersedeas bond be released and returned to the Pawn Shop. On July 16, 2002, the Pawn Shop responded to Jameson's motion for summary judgment and urged the circuit court to allow the case to go forward as directed by the court of appeals. The Pawn Shop further requested that it be awarded $500.00 in attorney's fees for its response to Jameson's motion for summary judgment.

On August 27, 2002, the Pawn Shop moved for summary judgment on the grounds that the statutes were unconstitutional. On October 24, 2002, a hearing on the two motions for summary judgment took place. Jameson asserted that the burden was on the Pawn Shop to obtain a ruling relative to the constitutional challenge and that, by failing to comply with § 16-111-106, the Pawn Shop waived that challenge. Jameson also argued that the Pawn Shop lacked standing to challenge the constitutionality of the statutes, because under *Ross v. State*, 347 Ark. 334, 64 S.W.3d 272 (2002), the statute is not unconstitutional, as applied to it. He

maintained the property belongs to him as found in two court proceedings and that the Pawn Shop received due process, primarily because it did not assert a formal demand until after the municipal court had adjudicated the true ownership of the property. The Pawn Shop argued that the statutes unfairly deprive it of a possessory interest and its lien interest in property without a hearing. It argued further that the attorney's fees were cut off when the bracelets were returned and that the last appeal to the court of appeals and the hearing in circuit court were not subject to attorney's fees.

On October 30, 2002, the circuit court entered its order and made the following findings:

- The Pawn Shop sufficiently complied with § 16-111-106, in notifying the Attorney General that it was contesting the constitutionality of §§ 18-27-202 and -203.

- The Pawn Shop has standing to mount the constitutional challenge.

- The statutes provide for a hearing before deprivation of the Pawn Shop's property interest.

- The statutes in question are constitutional.

- The award of attorney's fees is held in abeyance, pending appeal.

### I. Law of the Case

We first address an issue that is not raised by either party in this appeal: law of the case. We have described the rule of law of the case as follows:

> The general rule is that, where the pleadings and issues are substantially the same, all questions which were actually presented or which could have been presented in the first appeal are barred in the second appeal. Some jurisdictions hold that only questions actually decided are barred from subsequent consideration. But Arkansas follows the general rule. We have said in a number of cases that an argument which could have been raised in the first appeal and is not made until a subsequent appeal is barred by the law of the case.

*Alexander v.Chapman*, 299 Ark. 126, 127-28, 771 S.W.2d 744, 745 (1989) (internal citations omitted). *See also Lake View Sch. Dist. No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002); *Lindler v. Lindler*, 348 Ark. 322, 72 S.W.3d 841 (2002); *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002). This court also said in *Chapman*:

> Finally, we point out that our reliance on the law of the case doctrine does not conflict with the general proposition that when a case is reversed and remanded for a new trial, all of the issues are opened anew. In cases in which there is a broad remand, we allow a party to amend its pleadings as necessary. Here, there was no amendment of pleadings. The law of the case doctrine prevents consideration of an argument that could have been made at the first trial.

299 Ark. at 131, 771 S.W.2d at 747 (internal citations omitted). Though neither party raised the law-of-the-case issue and the circuit court did not rule on it, we can affirm the circuit court for a different reason. *See Alexander v. Chapman, supra.*

To reiterate the pertinent facts, after the municipal court entered judgment on February 5, 1999, and found that Jameson was the true owner of the jewelry and that the jewelry should be released, the Pawn Shop appealed that judgment to circuit court. On June 4, 1999, the Pawn Shop's appeal was heard in circuit court as well as Jameson's demand for attorney's fees and costs. In response to Jameson's demand for fees and costs, the Pawn Shop's counsel argued that § 18-27-202 was unconstitutional, as applied to the Pawn Shop, and that awarding fees and costs would be punishment for exercising its due process rights. According to the court of appeals in *Landers II* in which the history of this case is recited, the circuit court entered a decision finding that Jameson had not met his burden of proving that the jewelry was his. Judgment by the circuit court, therefore, was entered in favor of the Pawn Shop. The due process point and the constitutionality of the statutes were not addressed by the circuit court.

Jameson appealed the circuit court's judgment to the court of appeals, and that judgment was reversed in *Landers I*. Again, the issue of the constitutionality of the statutes was not raised or mentioned. The court of appeals reversed on the merits in *Landers I* and held that the evidence overwhelmingly demonstrated that the jewelry belonged to Jameson. In a petition for rehearing, the

Pawn Shop raised the constitutional issue for the first time in that appellate court. The court of appeals denied the petition without an opinion.

In *Landers II*, the court of appeals observed that the constitutional issue had not been decided by the circuit court in 1999; nor was it an issue on appeal in *Landers I* in 2000, until rehearing. Also, in *Landers II*, the court of appeals observed that it was only after *Landers I* and the first remand to circuit court that attorney's fees and the constitutionality of the statutes were at issue.

Counsel for the Pawn Shop argued, following the first remand to circuit court after *Landers I*, that §§ 18-27-202 and -203 were unconstitutional and that this issue had not been previously decided by either the circuit court or the court of appeals. Counsel for Jameson retorted that by denying the petition for rehearing following *Landers I*, without an opinion, the issue had been decided implicitly by the court of appeals and was now *res judicata*. The circuit court agreed that the statutes' constitutionality had been implicitly decided. The court of appeals disagreed, however, in *Landers II* and stated that because the circuit court originally decided the ownership issue in the Pawn Shop's favor, it was not necessary to address the constitutionality of the statutes in *Landers I*. Thus, the court of appeals held in *Landers II* that the circuit court's later decision that the constitutional issue had been implicitly decided was clearly erroneous.

The issue now confronting us is whether the Pawn Shop is foreclosed from raising the constitutional issue at this time, because it did not seek a ruling on that issue before the circuit court in the appeal from municipal court in 1999 and raise it to the court of appeals in *Landers I*. We conclude that law of the case should not foreclose this court from deciding the constitutional issue. It is true that this court has said time and again that all issues raised or that could have been raised in a first appeal cannot be raised in a second appeal. But this court has never extended the doctrine to require a prevailing party at the trial level to also obtain a ruling on a constitutional issue that may be an alternative reason to decide the matter in that party's favor. Nor has this court required that same prevailing party to cross appeal as an *appellee* on that same non-essential constitutional ground, if and when the matter is appealed to an appellate court.

This court has a well-settled principle that we will avoid a decision on the constitutionality of a state statute, when resolving the constitutional issue is not essential to deciding the case. *See, e.g., Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996); *McNew v. McNew*, 262 Ark. 567, 559 S.W.2d 155 (1977); *Board of Equal. v. Hills Shopping Center*, 251 Ark. 1055, 476 S.W.2d 211 (1972). We see no reason why this same principle should not apply to the circuit court's determination in 1999 in the instant case. The court ruled in favor of the Pawn Shop on the ownership point, and it was not essential for the court to rule on the constitutionality of the pawnshop statutes. Furthermore, when the constitutionality of a statute is challenged, the Attorney General of this state must be notified and is entitled to be heard. Ark. Code Ann. § 16-111-106(b) (1987). The purpose behind the notification to the Attorney General is to assure a "fully adversary and complete adjudication" of the constitutional issue. *Arkansas Dept. of Human Services v. Heath*, 307 Ark. 147, 149, 817 S.W.2d 885, 886 (1991). This was not done for purposes of the 1999 proceeding before the circuit court.

Early on, this court said in *Railway Company v. Smith*, 60 Ark. 221, 240, 29 S.W. 752, 754 (1895):

> While courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. . . . It is both proper and more respectful to a co-ordinate department to discuss constitutional questions only when that is the very *lis mota*. . . . In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet, if the record also presents some other clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when, consequently, a decision upon such question will be unavoidable.

We are aware that this court has said that the law-of-the-case doctrine extends to issues of constitutional law. *See, e.g., Bedell v. State*, 260 Ark. 401, 541 S.W.2d 297 (1976); *Feldman v. State Board of Law Examiners*, 256 Ark. 384, 507 S.W.2d 508 (1974); *Miller Lumber Company v. Floyd*, 169 Ark. 473, 275 S.W. 741 (1925). In each of the cited cases, which are the foundation cases

upon which we base that principle, the constitutional issue was considered in the first appeal. The appellants in those cases then sought to have the first holding by this court either reexamined or they argued a different ground for invalidating the legislative act involved in the second appeal. We held in each second appeal that law of the case applied and prevented the appellant from doing so. Those circumstances are totally different from what we have in the case at hand, where the constitutionality of the pawnbroker statutes was not addressed by the circuit court in 1999 or by the court of appeals in *Landers I*.

■ Accordingly, we hold that law of the case is not an alternative reason to affirm this case.

## II. Constitutional Argument

We turn then to the Pawn Shop's constitutional argument. Briefly, it contends that §§ 18-27-202 and -203 are unconstitutional, as applied to it, because due process protection, as guaranteed under the United States and Arkansas Constitutions, was not afforded. More specifically, the Pawn Shop claims that the two statutes force pawnshops to turn pawned property over to an alleged true owner upon request and upon execution of an affidavit of possession. When a pawnshop refuses to do so, it may be liable for the costs and attorney's fees incurred by the true owner in the ensuing litigation under § 18-27-203, if the true owner is successful. In short, the Pawn Shop urges that it is entitled to an adjudication of ownership in a court of law *prior* to any requirement to deliver the pawned property to a third party. It relies on *Fuentes v. Shevin*, 407 U.S. 67 (1972), for its due process argument and emphasizes that the time the statutes in question were enacted in 1961 was well before the *Fuentes* decision in 1972.

The Pawn Shop further describes the Hobson's choice it is forced to make. The Little Rock Police Department put a "hold" on the jewelry in July 1998, thereby freezing the jewelry from sale or release. If the Pawn Shop releases the property to an alleged true owner who presents an affidavit of possession, the Pawn Shop violates the police directive. If it does not release the property, it is subject to attorney's fees and costs incurred by the true owner in successful litigation.

We initially acknowledge the longstanding principles we invoke when a constitutional challenge to a legislative act has been mounted. We have said:

> All statutes are presumed constitutional and we resolve all doubts in favor of constitutionality. The party challenging a statute's constitutionality has the burden of proving that the act lacks a rational relationship to a legitimate objective of the legislature under any reasonably conceivable set of facts.

*Ester v. National Home Ctrs., Inc.*, 335 Ark. 356, 364-65, 981 S.W.2d 91, 96 (1998) (internal citations omitted). We have further said:

> If it is possible to construe a statute as constitutional, we must do so. Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable.

*Reinert v. State*, 348 Ark. 1, 4, 71 S.W.3d 52, 54 (2002) (internal citations omitted). In addition, we have added:

> It is not our role to discover the actual basis for the legislation. We merely consider whether there is any rational basis which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation *is not the product of arbitrary and capricious government purposes*. If we determine that any rational basis exists, the statute will withstand constitutional challenge.

*Jegley v. Picado*, 349 Ark. 600, 634, 80 S.W.3d 332, 351 (2002) (emphasis in the original, internal citations omitted).

We review questions of statutory interpretation *de novo*, because it is this court's responsibility to determine what a statute means. *Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002). In doing so, we look to the statutes to assess their ordinary and plain meaning. *See Nelson v. Timberline Int'l, Inc.*, 332 Ark. 165, 964 S.W.2d 357 (1998).

The statutes at issue read as follows:

> As used in this subchapter, unless the context otherwise requires, "pawnbroker" means and includes any person, firm, or corporation, or an agent thereof, who is engaged in the business of

lending money upon the security of articles of personal property and who retains possession of the articles until the loan is repaid.

Ark. Code Ann. § 18-27-201 (1987).

. . .

When any pawnbroker in this state shall, in good faith or otherwise, acquire, by purchase, pawn, gift, or otherwise, any article of personal property which has been stolen from the owner thereof, the pawnbroker shall return the personal property to the true owner thereof upon his request and the execution of his affidavit of possession.

Ark. Code. Ann. § 18-27-202 (1987).

. . .

(a) If any pawnbroker shall fail or refuse to return any property to the true owner thereof when requested to do so by him as provided in § 18-27-202, it shall be necessary for the true owner to resort to legal action to recover the property.

(b) In the event that the true owner is successful in a legal action, the defendant pawnbroker shall be required to pay all reasonable expenses incurred by the owner in recovering the property, including court costs and attorneys' fees, and any damages suffered by the true owner as a result of the pawnbroker failing or refusing to return the property to the true owner when so requested by him.

Ark. Code Ann. § 18-27-203 (1987).

The essence of the Pawn Shop's contention is that it has been denied procedural due process by this statutory scheme. The United States Supreme Court has enumerated three factors for evaluating a claim relating to procedural due process:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Gov-

ernment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). We first examine the Pawn Shop's interest in the jewelry at issue.

### a. Property Interest

The Pawn Shop directs our attention to § 18-27-201, which provides that a pawnbroker lends money "upon the security of articles of personal property and . . . retains possession of the articles until the loan is repaid." The Pawn Shop further contends that the Tenth Circuit Court of Appeals has made it clear that pawnbrokers have a constitutionally protected interest in goods pledged to them sufficient to support a claim of violation of due process, even though the goods may subsequently turn out to have been stolen. *See Wolfenbarger v. Williams*, 774 F.2d 358 (10th Cir. 1985).[1] Jameson counters with the boilerplate principle that from a thief a pawnbroker acquires nothing as against the true owner. *See generally* Nickles & Adams, *Pawnbrokers, Police and Property Rights—A Proposed Constitutional Balance*, 47 Ark. L. Rev. 793, 797 (1994).

It is clear to us that the Pawn Shop was seeking to protect its security or lien interest in the jewelry at the time Jameson made a claim on the pawned property as the true owner. Moreover, as the possessor of the pawned jewelry, the Pawn Shop had a possessory property interest entitled to due process protection. *See Fuentes v. Shevin, supra.* We conclude that the interest acquired by the Pawn Shop in the pawned goods constitutes a sufficient property interest to warrant due process protection. *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935) (a lien is "property" within the ambit of the Fourteenth Amendment).

### b. State Action

The Pawn Shop next contends that the involvement of the Little Rock Police Department, working with Jameson, deprived

---

[1] A subsequent appeal of the same case reiterated this holding. *See Wolfenbarger v. Williams*, 826 F.2d 930 (10th Cir. 1987), *abrogated on other grounds, Horton v. California*, 496 U.S. 128 (1990).

the business of the pawned property, and this constituted state action. We agree.

In *Leonards v. E.A. Martin Machinery Co.*, 321 Ark. 239, 900 S.W.2d 546 (1995), the issue was whether the repairmen's lien statutes required state action for enforcement. The owner of a bulldozer contended that the repairmen's lien statutes violated procedural due process under the United States Constitution, because they did not provide the owner a right to a hearing and other remedies for obtaining possession prior to sale. This court held that a private party's use of state-sanctioned private remedies or procedures did not rise to the level of state action. We said:

> Thus, we observe a significant distinction between cases involving actions taken by or with the overt assistance of state officials and those that do not involve any action or assistance by state officials. The former class of cases may include, among others, procedures for attachment or execution of a judgment as those procedures necessarily require state action by a judge or sheriff or both. For example, in an attachment case, a creditor must first obtain a writ of attachment from a court and then have that writ executed by a sheriff. *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). The latter class of cases may include cases such as the instant one where no action by a state official was taken inasmuch as Martin Machinery [the repairman] asserted its possessory lien pursuant to statute, but used no assistance from any state official in so doing. *See, e.g., Flagg Bros.*, 436 U.S. 149, 98 S. Ct. 1729, 56 L. Ed. 2d 185.

*Leonards*, 321 Ark. at 244, 900 S.W.2d at 549-50.

With respect to a due process violation under the Arkansas Constitution, we said the following in *Leonards*:

> When engaging in state due process analysis, this court has used a balancing test of competing interests somewhat similar to the federal test enumerated in *Mathews v. Eldridge*. Consistent therewith, for purposes of determining whether one has been deprived of property in violation of the Arkansas Constitution's due process provision, article 2, § 8, we adopt the analysis of state action as enunciated in the federal context by *Lugar [v. Edmundson Oil Co.]*, 457 U.S. at 937. Two requirements, therefore, must be met before we will find state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Leonards*, 321 Ark. at 245-46, 900 S.W.2d at 500-51 (internal citations omitted). We concluded by holding that under either the state or federal constitution, no state official was involved in asserting a possessory lien under the repairmen's lien statutes. Thus, there was no state action.

The facts of the instant case are entirely different. Under the facts of this case, the Little Rock Police Department found the stolen jewelry, placed a hold on it, and alerted Jameson to its whereabouts on July 30, 1998. Jameson relied on the Department to find the jewelry and so advise him in order that he could assert his claims under the statutes. This joint participation between the Little Rock Police Department and Jameson in depriving the Pawn Shop of the use of the jewelry is sufficient for us to conclude that state action was involved. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). Contrary to the dissent's protest that this opinion casts doubt on all police seizures and is breaking new ground, the opinion in reality, adheres to the precedent of both this court and the United States Supreme Court regarding joint participation and state action in civil cases where a property interest is in dispute.

*c. Erroneous Deprivation of Property*

The crux of the Pawn Shop's appeal centers on its contention that the police department's "hold" on the property in July 1998 coupled with the alleged true owner's affidavit of possession effectively tied up the pawned property and deprived the Pawn Shop of its use without any adjudication of ownership by a court of law.

We emphasize that we do not consider the police "hold," in itself, to be the issue in this case. Pawnshop records are required to be kept and made available to law enforcement agencies upon request to aid in criminal investigations. *See* Ark. Code Ann.

§ 12-12-103 (Repl. 1999). Similarly, placing a "hold" on pawn-shop property that matches stolen property can be a valuable law enforcement tool. What is the issue is whether police participation in the instant case in locating the jewelry, placing the "hold," and then advising Jameson so that he could make a request and deliver his affidavit of possession to the Pawn Shop under § 18-27-202 effectively deprived the Pawn Shop of that property without due process of law.

Jameson answers the Pawn Shop's claim with the same retort that was noted in the circuit court's judgment. The Pawn Shop received due process at the municipal court hearing after Jameson sued for conversion. The problem with this argument, from the Pawn Shop's perspective, is that the municipal court hearing occurred after Jameson's request had been made and the affidavit had been furnished, all of which constituted a summary mandate to turn the property over to Jameson under the statute. This effectively froze the property and deprived the Pawn Shop of its usage without a *prior* adjudication of ownership.

The Pawn Shop contends that the United States Supreme Court's decision in *Fuentes v. Shevin, supra,* and this court's decision in *McCrory v. Johnson, supra,* decide this case. In *Fuentes,* the Court addressed whether Florida and Pennsylvania statutes "authorizing the summary seizure of goods or chattels in a person's possession under a *writ of replevin*" were constitutional under the Fourteenth Amendment's "guarantee that no State shall deprive any person of property without due process." 407 U.S. at 69. *See also United States v. James Daniel Good Real Property,* 510 U.S. 43 (1993) (absent exigent circumstances, due process requires notice and a hearing to owner prior to civil forfeiture of the owner's home following a drug conviction). The statutes in question provided for the "issuance of writs ordering state agents to seize a person's possessions, simply upon the ex parte application of any other person who claims a right to them and posts a security bond." 407 U.S. at 69-70. The Court stated that the statutes in question failed to provide for notice to the possessor or for the opportunity to challenge "the seizure at any kind of prior hearing." 407 U.S. at 70. The Supreme Court held that these procedures violated the Fourteenth Amendment's guarantee of due process, because they failed to provide a meaningful notice and opportunity for a hearing.

In *McCrory v. Johnson, supra,* the issue was the constitutionality of this state's prejudgment attachment procedures. Under the then-existing statutes, prejudgment attachment of a debtor's personal property could occur without prior notice or a prompt hearing before a court. We applied a balancing test in *McCrory* and weighed the burden on the state's judiciary to conduct prompt, pre-attachment hearings against the risk of erroneous deprivation of a debtor's personal property interests. We concluded that the risk to the debtor outweighed the burden caused by additional procedures in court and struck down our pre-attachment code provisions, as violative of procedural due process.

The dilemma facing this court is whether *Fuentes* and *Mc-Crory* are so analogous to the instant case that §§ 18-27-202 and -203 must meet the same fate and be adjudged violative of the Pawn Shop's due process rights. Jameson argues vehemently that this should not transpire because (1) the Pawn Shop had an ownership determination in municipal court before it raised the constitutional arguments, and (2) we presume state statutes to be constitutional. He certainly is correct on the second point. The question, however, is whether that presumption is rebuttable. We turn to the first point for the answer.

The Pawn Shop argues that it was required under § 18-27-202 to return the jewelry to Jameson on his request and execution of an affidavit. This was summary justice, according to the Pawn Shop, and mandatory under the statute. Were the Pawn Shop not to do so, it was subject under § 18-27-203 to mandatory payment of the true owner's attorney's fees and costs incurred in successful litigation. That is precisely what transpired in the instant case, and a claim for substantial attorney's fees has been made by Jameson.

 In *McCrory v. Johnson, supra,* we employed a balancing test to resolve the issue. Using a similar analysis in the instant case, we balance the burden on the judiciary in determining ownership before a third party is entitled to the pawned property against the risk that a pawnbroker could be erroneously deprived of pledged property by a non-meritorious claim or false affidavit. As in *McCrory,* we conclude that the risk of erroneous deprivation of property and the benefits that would accrue from additional judicial safeguards afforded to pawnbrokers like the Pawn Shop substantially outweigh the resulting burden on the judiciary.

Other jurisdictions have wrestled with similar issues. In *Florida Pawnbrokers & Secondhand Dealers Ass'n, Inc. v. City of Fort Lauderdale*, 699 F. Supp. 888 (S.D. Fla. 1988), the issue, in a § 1983 action, was whether a pawnbroker seizure statute violated due process. The statute authorized police officers to seize pawned property based on an *ex parte* application of a putative true owner and then provided for the return of the property to that owner. The district court held that the statute was unconstitutional, because (1) the statute did not require notice to the pawnbroker, (2) the alleged true owner was not required to post bond against meritless claims, and (3) there was no hearing provided before an impartial decisionmaker. *See also Wolfenbarger v. Williams, supra* (statutory scheme providing for post-deprivation hearing was constitutionally infirm); *Wacksman v. Harrell*, 174 Ohio St. 338, 189 N.E.2d 146 (1963) (police seizure of pawnbroker property without a pre-deprivation hearing was unconstitutional); *Rassner v. Federal Collateral Soc.*, 299 Mich. 206, 300 N.W. 45 (1941) (statute invalid for not providing a pre-deprivation hearing to pawnbrokers). *But see In re Two (2) Bose Speakers, Serial No. 121098*, 17 Kan. App. 2d 179, 835 P.2d 1385 (1992) (pawnshop owner's right to possess stolen property inferior to that of true owner; hearing was afforded to pawnbroker; issue of hearing pre-deprivation or post-deprivation not addressed).

 While the issue of whether a police "hold" is a seizure is not before us, we have no doubt that the Pawn Shop's property interest was impaired by the statutory scheme provided under §§ 18-27-202 and -203.[2] We hold that §§ 18-27-202 and -203 are unconstitutional, as applied to the Pawn Shop in this case, because they effectively deprived that business of a property interest without a pre-deprivation hearing before a court of law. We agree with Jameson that due process was afforded the Pawn Shop at the municipal court hearing some two months after Jameson made his request for the property and submitted his affidavit. Nevertheless, we are convinced that under *Fuentes* and *McCrory*, procedural due process must be provided before a property right is impaired, not afterwards.

---

[2] Two attorney general opinions have concluded that pre-deprivation hearings may have to be provided to pawnbrokers to satisfy federal due process requirements. *See* Attorney General Opinion No. 99-149 (July 9, 1999); Attorney General Opinion No. 95-092 (July 12, 1995).

We reiterate that it is not our intention in this opinion to undermine the authority of law enforcement agencies to place a "hold" on pawned property that matches the description of stolen property. Rather, we are holding that §§ 18-27-202 and -203 are unconstitutional in mandating the Pawn Shop to return property to Jameson based merely on his request and affidavit before a judicial determination of ownership had taken place and in further assessing attorney's fees and costs against the Pawn Shop after Jameson was subsequently adjudicated the true owner.

Because we hold that § 18-27-203 is unconstitutional, as applied to the Pawn Shop, an award of attorney's fees under that statute is invalid. We remand to the circuit court for entry of an order in accordance with this opinion.

Reversed and remanded.

CORBIN and HANNAH, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. The majority holds that Ark. Code Ann. §§ 18-27-202 and -203 (1987) are un-constitutional as applied to Appellant Big Daddy's Pawn Shop in mandating the Pawn Shop to return pawned, stolen property to its true owner, Appellee Ken Jameson, before a judicial determination of ownership had been made. In so holding, the majority concludes that (1) the Pawn Shop had an enforceable property interest as against the true owner, (2) that Jameson was a state actor, and (3) that the trial afforded to the Pawn Shop in the district court did not satisfy the requirements of due process. I disagree with these conclusions, and I respectfully dissent.

In the first place, I disagree with the majority's conclusion that the Pawn Shop had an enforceable interest in the stolen property, even as against the true owner. In my opinion, this conclusion conflicts with this court's well-established law that a purchaser of stolen property, even if he acts in good faith, acquires no interest in the property against the true owner. As far back as 1853, in *Phelan v. Dalson*, 14 Ark. 79, this court recognized this principle:

> [I]t is clear that where property has been obtained from the owner by a felonious act, his unqualified ownership is not in the least changed, and *he may peaceably take it, in whose hands soever he may find it.*

*Id.* at 82-83 (emphasis added) (citing *Long on Sales*, page 166-68, and cases cited therein). *See also Russell v. Brooks*, 92 Ark. 509, 122 S.W. 649 (1909).

This principle was reinforced in *Eureka Springs Sales Co. v. Ward*, 226 Ark. 424, 290 S.W.2d 434 (1956), which held that the appellant was liable in conversion to the true owner for selling stolen cattle. In so holding, this court observed:

> The general rule — as regards all personal property except money and negotiable paper — is, that a purchaser from a thief acquires no title *against the true owner*, in the absence of limitations and estoppel (and neither of these is involved in this case).

*Id.* at 427, 290 S.W.2d at 436 (emphasis added). *See also Superior Iron Works v. McMillan*, 235 Ark. 207, 357 S.W.2d 524 (1962) (holding that this state's law is clear that title to stolen property remains in its rightful owner). This court then went on to cite the above holding in *Phelan*, as well as the following black-letter law:

> Even though such a purchaser may be treated as having title and the right to their possession *as against everyone but the rightful owner*, a sale by the thief or by any person claiming under the thief *does not vest any title in the purchaser as against the owner*, though the sale was made in the ordinary course of trade and the purchaser acted in good faith.

*Eureka Springs Sales*, 226 Ark. at 428, 290 S.W.2d at 436-37 (emphasis added) (quoting 42 Am. Jur. 227).

More recently, our court of appeals has reiterated this legal principle. In *Midway Auto Sales v. Clarkson*, 71 Ark. App. 316, 318, 29 S.W.3d 788, 789-90 (2000), the court of appeals cited this court's decision in *Eureka Springs Sales* as standing for the proposition that "[a]bsent exigent circumstances, one who purchases from a thief acquires no title as against the true owner." *See also Buck v. Gillham*, 80 Ark. App. 375, 96 S.W.3d 750 (2003); *Beverage Prods. Corp. v. Robinson*, 27 Ark. App. 225, 769 S.W.2d 424 (1989).

The majority omits any mention of these holdings and, instead, relies on cases from other jurisdictions. In my opinion, those cases are factually distinguishable, in that they involve deprivations of the pawnshops' property interests by the police or other governmental entities, not by the true owner. Only one of

the cases cited, *Rassner v. Federal Collateral Society, Inc.*, 299 Mich. 206, 300 N.W. 45 (1941), involved the true owner attempting return of the property. Even there, however, the government action was involved, in that a search warrant was issued authorizing immediate seizure of the stolen property by the police. The pawnshops in those cases were entitled to due process prior to being deprived of the property because their right to possession was superior as against everyone in the world, including the police, *but* the rightful owner.

The distinction I make based on whom is seeking the return of the property was also made in two of the cases that the majority cites. In *Wolfenbarger v. Williams*, 774 F.2d 358 (10th Cir. 1985), the pawnbroker, Wolfenbarger, brought suit against three police officers, the city's police department, the city itself, and the prosecuting attorney and his assistant prosecutor. The pawnbroker alleged that the defendants had violated her due-process rights by seizing allegedly stolen property from her without first affording her a hearing. In ruling in favor of the pawnbroker, the Tenth Circuit acknowledged Oklahoma law that, like ours, provided that (1) no one can confer a better title than he has, and (2) since the true owner of property cannot be divested of his or her ownership by a thief, "even an honest pawnbroker cannot *hold* stolen property as against the true owner." *Id.* at 361 (emphasis added) (citing *Adkisson v. Waitman*, 202 Okla. 309, 213 P.2d 465 (1949)). These general principles did not mean that the pawnbroker had no constitutionally protected rights in the property as against the government defendants.

The *Wolfenbarger* court did not stop with this analysis. It went on to implicitly hold that although the pawnbroker had an enforceable property interest against the government defendants, she would not have had an enforceable interest in the possession of stolen property against the true owner. This conclusion is apparent from the court's discussion of the Oklahoma Supreme Court's holding that even one who acquires stolen property from a thief could not hold the property against the true owner, but such purchaser "has a 'qualified possessory interest' and has 'lawful possession against all the rest of the world.' " *Id.* at 361 (quoting *Snethen v. Oklahoma State Union of the Farmers Edu. & Coop. Union*, 664 P.2d 377, 381 (Okla. 1983)). The court then recited the Oklahoma Supreme Court's distinction of "legal" and "lawful" property interests:

> A legal interest is enforceable against the whole world. A good-faith purchaser for value acquires an interest that is lawful and enforceable against all the world *but the legal owner.* Although it is only a qualified possessory interest, *it is lawful and enforceable to a very large extent.*

*Id.* at 362 (emphasis added) (quoting *Snethen,* 664 P.2d at 381). Based on this discussion, I believe that had the dispute been between the pawnbroker and the true owner, rather than the government, the *Wolfenbarger* court would have concluded that the pawnbroker did not have an enforceable interest in the stolen property.

In another case cited by the majority, *Wacksman v. Harrell,* 174 Ohio St. 338, 189 N.E.2d 146 (1963), the Ohio Supreme Court invalidated city rules allowing the police to sequester and seize allegedly stolen property from a pawnbroker without a proper and valid warrant. In so holding, however, the court noted that "[i]t is well established that one who purchases or acquires property from a thief in good faith has a right to the possession thereof against everyone *except the rightful owner."* *Id.* at 340, 189 N.E.2d at 148 (citations omitted). The court also noted that should the pawnbroker wish to contest the alleged true owner's title to the property, "the pawnbroker is entitled to test ownership and possessory rights in a civil action if he so elects." *Id.* at 342-43, 189 N.E.2d at 150.

In the present case, it is the property's true owner, not the government, that seeks return of the property from the Pawn Shop. Under our long-standing case law, the Pawn Shop cannot acquire any interest in stolen property, even if it purchased the property in good faith, as against the true owner. I would agree with the majority's holding that the Pawn Shop was entitled to due process based on its possessory interest had the issue been the Pawn Shop's interest versus that of the police. However, because the Pawn Shop cannot acquire any interest, by possession or title, in the stolen property as against the true owner, there is no property interest for which due process would apply.

The second point on which I dissent is from the majority's conclusion that Appellee Jameson is a state actor due to his "joint participation" with the police in attempting to have his property returned. Apparently, this joint participation results from Jameson's actions in (1) reporting the theft of his property to the police, and (2) relying on the police to find the property and then alert

him when it was found. Under this holding, any citizen who files a police report and then expects the police to do its job automatically becomes a state actor, for purposes of determining whether procedural due process is required. The implications of this holding are obviously far-reaching.

Finally, I disagree with the majority's conclusion that sections 18-27-202 and -203 are unconstitutional as applied to the Pawn Shop, because the Pawn Shop was not provided due process prior to being deprived of its possessory interest in the stolen property. As far as I can discern from the majority opinion, the act that impaired the Pawn Shop's interest was not the hold placed on the property by the police, but rather, was Jameson's act of executing an affidavit and presenting it to the Pawn Shop. Indeed, the majority takes great pains to state that it does not conclude that the police's hold, in and of itself, deprived the Pawn Shop of its use or possession of the property. If the hold itself does not constitute an impairment, however, it is difficult to understand how the mere act of presenting an affidavit combined with this non-impairing hold constitutes an impairment.

To the contrary, Jameson's affidavit apparently had no impact·on the Pawn Shop's interest, given the fact that it continued to possess the property. In reality, both the police's hold and Jameson's affidavit had no more impairing effect than a pretrial temporary restraining, which could have legitimately been issued by any court to maintain the status quo until ownership could be determined. Thus, in my opinion, there was no impairment resulting from Jameson's actions or the police's hold until *after* the issue of ownership was adjudicated in district court, when the court ordered the Pawn Shop to return the property to Jameson. As such, I cannot agree that the Pawn Shop did not receive due process prior to being deprived of its interest in the property.

The facts of this case are distinguishable from those in *Fuentes v. Shevin*, 407 U.S. 67 (1972), *Wolfenbarger*, 774 F.2d 358, and *Florida Pawnbrokers & Secondhand Dealers Ass'n, Inc. v. City of Fort Lauderdale*, 699 F. Supp. 888 (S.D. Fla. 1988). In each of those cases, the police actually seized the property prior to any judicial determination of ownership. Similarly, the holdings in *Wacksman*, 174 Ohio St. 338, 189 N.E.2d 146, and *Rassner*, 299 Mich. 206, 300 N.W. 45, are distinguishable in that although the police had not actually seized the property from the pawnbrokers, the laws in question provided for the automatic seizure. I do not believe that

the holdings in those cases warrant the holding reached by the majority in this case, that the Pawn Shop's due-process rights were violated by the application of sections 18-27-202 and -203.

Moreover, I believe that the statutes, in general, provide for due process, *i.e.*, an adjudication of ownership, prior to depriving pawnbrokers of any alleged stolen property in its possession. Section 18-27-202 provides that upon presentation of an affidavit of ownership by the true owner, the pawnbroker shall return the stolen property. If, however, the pawnbroker fails or refuses to turn over the property, *i.e.*, because the pawnbroker contests the affidavit of ownership, the *owner* must file suit against the pawnbroker, where the issue of ownership will be judicially determined. *See* section 18-27-203(a).

Unlike the laws at issue in the cases relied on by the majority, our statutes do *not* provide for the immediate seizure of the property in the event the pawnbroker questions the affidavit of ownership. Rather, they plainly provide that the owner must seek a determination of ownership from the courts before there may be any deprivation of the property. This clearly satisfies the constitutional requirement of due process. Furthermore, the due process afforded to the pawnbroker is in no way lessened by the fact that section 18-27-203(b) provides a penalty to the pawnbroker (requiring it to pay all reasonable expenses if the true owner is successful in establishing ownership), because such penalty may only be imposed *after* a judicial determination of ownership.

In sum, I must dissent from the majority's opinion because I believe that the Pawn Shop received due process under the circumstances of this case. In fact, I believe it received more process than it was due, under our well-settled case law that a pawnbroker acquires no interest in stolen property as against the true owner. I completely agree with the sentiment expressed by the Kansas Court of Appeals regarding the risk that pawnbrokers take that property offered as security for a loan is stolen:

> Because the pawnbroker is the one who deals with the thief, he or she should bear the risk of accepting stolen property. The pawnbroker's remedy in this case is to find the thief and recover against the thief for breach of warranty of title[.]

*In Re: Two (2) Bose Speakers, Serial No. 121098*, 17 Kan. App. 2d 179, 183, 835 P.2d 1385, 1388 (1992). In my opinion, justice will not be served by remanding this now five-year-old case to afford the Pawn

Shop yet another bite at the apple, while simultaneously requiring the true owner, Jameson, who has already been victimized by the theft, to jump through more hoops before he may finally obtain the return of his property. Accordingly, I dissent.

HANNAH, J., joins in this dissent.